910

Carl V. Wisner, of Chicago, Ill., for appellant.

Max W. Zabel, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge.

It is important to classify the proceeding here—whether for civil or criminal contempt, or both—since the order for payment to the United States of part of the fine imposed can be supported only in a proceeding for criminal contempt, and for payment of part to the plaintiff only in one for a civil contempt. In considering the question, one turns to the exhaustive discussion of civil and criminal contempts as found in Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874. The opinion, from page 440 of 221 U. S., 31 S. Ct. 492, 499, on, is de-

voted to elucidating the distinction between civil and criminal contempts.

Here, as there, the entire proceeding and each and every step therein, including the final order of the court, is entitled in the equity cause out of which the alleged contempt arose, and was instituted and conducted by the counsel for appellee, and in no instance, here or in the District Court, on behalf of the United States. As to this it was said in the Gompers Case:

"We find nothing in the record indicating that this was a proceeding with the court, or more properly the government, on one side and the defendants on the other. On the contrary, the contempt proceedings were instituted, entitled, tried, and, up to the moment of sentence, treated as a part of the original cause in equity. The Bucks Stove & Range Company was not only the nominal, but the actual party on the one side, with the defendants on the other. The Bucks Stove Company acted throughout as complainant in charge of the litigation. As such and through its counsel, acting in its name, it made consents, waivers, and stipulations only proper on the theory that it was proceeding in its own right in an equity cause, and not as a representative of the United States, prosecuting a case of criminal contempt. It appears here also as the sole party in opposition to the defendants; and its counsel, in its name, have filed briefs and made arguments in this court in favoring affirmance of the judgment of the court below."

The Gompers Opinion refers to the usual practice of entering a rule to show cause. Here this proceeding was not followed. Although papers and orders appear to have been entitled "Rule to Show Cause," this proceeding was commenced by a notice from attorneys for plaintiff to attorneys for defendant that on a certain day "we will present to the court the accompanying motion for the commitment of the defendant for contempt of his violation of the preliminary injunction in this cause." This is surely not a motion for a rule to show cause, and no such rule was ever applied for or granted. But on October 1 there was presented to the court a motion which did not follow the notice to the effect that there would be presented a motion for defendant's commitment for contempt, etc., but the motion then presented was that he be "adjudged in contempt and be suitably penalized for violation of the Permanent Injunction heretofore granted in this cause." Had the motion followed the notice it might have been some indication that the proceedings were to be criminal. As stated in the Gompers Opinion, commitment by way of penalty for contempt of court may be imposed only where the proceeding is for criminal contempt. In the absence of a petition for a rule to show cause, or of the entry of such rule, it is at least extremely doubtful if a criminal contempt could be proceeded with or a penalty for criminal contempt imposed.

There are here the further facts, that no contempt rule was ever served on Norstrom; that after the filing of the motion on October 1 Norstrom had no opportunity to be present upon its hearing, and was not in fact present; that upon the hearing no witnesses were sworn and no evidence given other than by ex parte affidavits. If, as was stated in effect in the Gompers Case, the nature of the proceedings may be considered in classifying the contempt charged, we are of opinion that the entire proceedings here, apart from the penalty imposed, strongly indicate that they were not in or for a criminal contempt, but wholly civil, and that the imposition of so much of the penalty as was made payable to the United States is wholly ineffectual and void.

But this does not dispose of so much of the judgment rendered as is attributable to the proceeding as one for civil contempt. In discussing the proposition of penalizing civil contempt it was said in the Gompers Case:

"In this case the alleged contempt did not consist in the defendant's refusing to do any affirmative act required, but rather in doing that which had been prohibited. The only possible remedial relief for such disobedience would have been to impose a fine for the use of complainant, measured in some degree by the pecuniary injury caused by the act of disobedience. Rapalje, Contempts, §§ 131–134; Wells v. Oregon Co. [C. C.] 19 F. 20; In re North Bloomfield Co. [C. C.] 27 F. 795; Sabin v. Fogarty [C. C.] 70 F. 483."

Along this same line the Court of Appeals of the Second Circuit said, in Christensen Engineering Co. v. Westinghouse Air Brake Co., 135 F. 774, 782, respecting the penalty imposed for civil contempt:

"It will thus be seen that the practice has not been uniform, and that in some of the adjudged cases the award, like that in the present case, was for a round sum, not based upon any proved items of loss or expense, but apparently intended to cover probable loss and expenses. It is obvious that a fine exceeding the indemnity to which the complainant is entitled is purely punitive, and, not-

914

withstanding the foregoing precedents to the contrary, we think that when it is imposed by way of indemnity to the aggrieved party it should not exceed his actual loss incurred by the violation of the injunction, including the expenses of the proceedings necessitated in presenting the offense for the judgment of the court. We are also of the opinion that when the fine is not limited to the taxable costs it should not exceed in amount the loss and expenses established by the evidence before the court. Unless it is based upon evidence showing the amount of the loss and expenses, the amount must necessarily be arrived at by conjecture, and in this sense it would be merely an arbitrary decision. Another reason why it should be based upon evidence is that otherwise the question of its reasonableness cannot be re-examined upon an appeal from a final decree in the cause, and the appellate court would have to treat the fine as a purely arbitrary one, or deny to the appellant his right of review."

The record here affords no evidence of the loss or damage incurred by appellee through Norstrom's disobedience of the injunction. It does not appear that more than a single hair clipper was actually made or sold after the permanent injunction, and we fail to see how such a record can support a fine of $500 payable to appellee. In the Gompers Case it was said:

"If, then, this sentence for criminal contempt was erroneously entered in a proceeding which was a part of the equity cause, it would be necessary to set aside the order of imprisonment, examine the testimony, and thereupon make such decree as was proper, according to the practice in equity causes on appeal."

Regarding as we do the proceeding here as one wholly in the equity cause, we believe we may direct the entry of such a decree as we find to be in consonance with the equities. Under the state of the record we believe the court was entitled to impose a penalty for the civil contempt only, measured by the reasonable loss and damage which accrued to appellee by reason of the contemptuous acts of appellant. One element of such damages would be appellee's costs and attorneys' fees, matters such as courts are often called to pass upon, even in the absence of opinion evidence as to amount. In the very nature of things courts should be able to reach a fair conclusion as to the amount of ordinarily necessary costs and attorneys' fees to be awarded in such a case. We believe that in this simple and, to say the least, quite

informal proceeding an award to appellee of $250 for its necessary costs and attorneys' fees incurred in the District Court would be fair compensation. For obvious reasons such expenses and fees incurred in this court are not allowable.

The order of the District Court appealed from is reversed, and the cause is remanded to the District Court, with direction to enter there an order finding appellant guilty of civil contempt, and imposing on him a fine of $250, to be paid to appellee, appellant to stand committed until the fine is paid, or he is otherwise discharged.

Circuit Court of Appeals, First Circuit.
June 5, 1930.