**UNITED STATES of America,**
**Plaintiff,**

v.

**Francis D. MONTGOMERY, Defendant.**

**Civ. No. 1362.**

United States District Court
D. Montana,
Billings Division.

Oct. 9, 1957.

Krest Cyr, U. S. Atty., Butte, Mont., for District of Montana, and Dale F. Galles, Asst. U. S. Atty., Billings, Mont., for plaintiff.

Manuel J. Roth, Jordan, Mont., for defendant.

JAMESON, District Judge.

On February 13, 1953, an amended decree was entered in this action permanently enjoining defendant "from in any manner, or at all, driving, herding or conveying any cattle or other livestock upon or across, or grazing any cattle or other livestock upon, or allowing any cattle or other livestock owned by the defendant, Francis D. Montgomery, or in his charge, custody, or control, to drift onto or graze, feed or pasture upon the Federal Range within the boundaries of Montana Grazing District No. 2, and particularly upon any Federal range within secs. 7, 17, 18, 19, NW¼, W½SW ¼ sec. 20, W½, N½SE¼ secs. 29, 20, 21, W½NW¼, SW¼, W½SE¼ sec. 32 T. 24 N.R. 41 E. secs. 24 and 25 T. 24 N.R. 40 E.M.P.M. without a license or permit to do so granted by the Secretary of the Interior, or under his authority as provided by the rules and regulations of the Secretary of the Interior in force and effect with respect to Montana Grazing

District No. 2." This was a consent decree, entered pursuant to stipulation of the parties in open court, acting through their respective counsel of record.

On January 29, 1957, the United States Attorney for the District of Montana petitioned the court to institute a proceeding for contempt, alleging a violation of the amended decree in that defendant permitted his cattle to drift, graze, feed and pasture upon the lands hereinabove described as follows: (a) 9 head on June 20, 1956; (b) 14 head on July 18, 1956; (c) 11 head on August 12, 1956, after defendant had been served with notice of trespass on July 18, 1956; and on June 1, June 14, July 8, July 22, August 9, September 3, and September 11, 1956, cattle belonging to the defendant were observed grazing, feeding and pasturing upon said lands. Order to show cause was issued on January 29, 1957, but was not served. A second order to show cause was issued September 3, 1957, and pursuant thereto a hearing was held on September 17, 1957, the plaintiff being represented by its counsel Dale F. Galles, Assistant United States Attorney, and the defendant being present in person and represented by his counsel, Manuel J. Roth.

Employees of the Bureau of Land Management and other witnesses were sworn and testified on behalf of plaintiff. It appears from their testimony that cattle belonging to the defendant were grazing and pasturing upon portions of the lands hereinabove described on June 1, June 14, June 20, July 5, July 18, July 22, August 9 and September 3, 1956.

It was admitted by defendant that notice of trespass was served upon defendant on July 18, 1956. Defendant testified in his own behalf that he checked on his cattle every week and tried to keep them on his own land; that he had never herded cattle onto plaintiff's land; that some of his cattle may have been on plaintiff's land in July, 1956; that he is not in a position financially to maintain fences; and that representatives of the Bureau of Land Management had refused to come out to help him "solve the problem".

Defendant, through his counsel, moved to dismiss on the grounds that plaintiff had failed to prove any contempt, and particularly any flagrant contempt as alleged in plaintiff's petition, and that any movement of the defendant's cattle onto plaintiff's land was inadvertent.

■ The court finds from the evidence that cattle belonging to the defendant were grazing and pasturing upon lands of the plaintiff on June 1, June 14, June 20, July 5, July 18, July 22, August 9 and September 3, 1956, in violation of the amended decree entered herein on February 13, 1953, and that defendant accordingly is in contempt of this court for his failure to comply with the provisions of said amended decree.

■ It is well settled (1) that the United States can prohibit absolutely or fix terms on which its property may be used; (2) that Congress has the exclusive right to control and dispose of the public lands of the United States; and (3) that when that right has been exercised with reference to lands within the borders of a state, neither the state nor any of its agencies has any power to interfere. United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; Light v. United States, 220 U.S. 523, 31 S.Ct. 485, 55 L.Ed. 570; Utah Power & Light Co. v. United States, 243 U.S. 389, 404, 37 S.Ct. 387, 61 L.Ed. 791; Griffin v. United States, 8 Cir., 168 F.2d 457.

Pursuant to the Taylor Grazing Act (43 U.S.C.A. § 315, et seq.) and the regulations, Grazing District No. 2, Montana, which embraces the lands trespassed upon, was established by the Secretary of the Interior on July 11, 1935. Section 161.6 of the regulations prescribes the conditions under which permits or licenses will be issued to qualified applicants, and Section 161.11(a) provides that the following acts are prohibited on the Federal range:

"(1) Grazing livestock upon, allowing livestock to drift and graze

on, or driving livestock across the Federal range, including stock driveways, without an appropriate license or permit, regular or free-use, or a crossing permit.

"(2) Grazing livestock upon or driving livestock across the Federal range, including stock driveway, in violation of the terms of a license or a permit, either by exceeding the number of livestock permitted, or by allowing livestock to be on the Federal range in an area or at a time different from that designated, or in any other manner."

 The trespass in this case is not a single act, but was observed at frequent intervals over a period of two and one-half months. Accordingly, I find no merit in defendant's contention that the movement of defendant's cattle onto plaintiff's land was inadvertent. Moreover, non-compliance with a court's decree is not excused by testimony that the defendant acted in good faith or that his failure to comply was not purposeful and intentional. National Labor Relations Board v. Remington Rand, Inc., 2 Cir., 1942, 130 F.2d 919, 936; Evans v. International Typographical Union, D.C. S.D.Ind.1948, 81 F.Supp. 675, 688. "An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently". McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599.

 The question arises as to whether this proceeding is for criminal or civil contempt, or both. "Contempts are neither wholly civil nor altogether criminal. And 'it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both.' Bessette v. W. B. Conkey Co., 194 U.S. [324,] 329, 24 S.Ct. 665, 48 L.Ed. [997,] 1002. But in either event, and whether the proceedings be civil or criminal, there must be an allegation that in contempt of court the defendant has disobeyed the order, and a prayer that he be attached and punished therefor. It

is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court". Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797, 806, 34 L.R.A.,N.S., 874.

 The case of Gompers v. Bucks Stove & Range Co., supra, contains an exhaustive discussion of the nature of both civil and criminal contempt proceedings. Among other distinctions, the court there points out that, "Proceedings for civil contempt are between the original parties, and are instituted and tried as a part of the main cause. But, on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause." The petition, order to show cause, and answer in this proceeding were all entitled in the original action, i. e., "Civil No. 1362". This, however, is not in itself conclusive, especially where the United States is a party. United States v. United Mine Workers, 330 U.S. 258, 299–300, 67 S.Ct. 677, 91 L.Ed. 884.

 Rule 42(b) of the Rules of Criminal Procedure, 18 U.S.C.A., relating to criminal contempt proceedings provides that a criminal contempt shall be prosecuted on notice and that, "The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such." Nowhere is the contempt here involved described as "criminal". The defendant did not enter a plea, but rather filed an answer to the order to show cause. While the omission of the words "criminal contempt" from the petition and order to show cause is not necessarily fatal to a proceeding in criminal contempt, the defendant must be

aware that a criminal contempt is charged. See United States v. United Mine Workers, supra.

It may be argued that the use of the word "punished" in the petition and order to show cause was sufficient notice to defendant that a criminal contempt was contemplated. But "punishment" as used in contempt cases is ambiguous. United States v. United Mine Workers, supra. Where counsel and the court have difficulty in determining whether a criminal contempt was charged, certainly it cannot be said that the defendant was aware that this proceeding was one for criminal contempt. Accordingly, it is my conclusion that the proceeding must be construed as an action for civil rather than criminal contempt.

A court of the United States has power to punish by fine or imprisonment, at its discretion, such contempt of its authority as "disobedience or resistance to its lawful writ, process, order, rule, decree, or command." Title 18 U.S.C.A. § 401. This applies to civil as well as criminal contempt proceedings. When a fine is imposed in civil contempt proceedings, it is punishment for past contemptuous conduct. Imprisonment in civil contempt cases is ordered where the defendant refuses to do an affirmative act required by an order mandatory in its nature. Gompers v. Bucks Stove & Range Co., supra; Penfield Co. v. S. E. C., 330 U.S. 585, 594, 67 S.Ct. 918, 91 L.Ed. 1117.

The rules with respect to imposition of a fine in civil contempt proceedings were well summarized in Yanish v. Barber, 9 Cir., 1956, 232 F.2d 939, 944, where the court said:

"In a civil contempt proceeding the type, character and extent of the relief granted rest upon the trial court's discretion as measured by the showing made. E. Ingraham Co. v. Germanow, 2 Cir., 1925, 4 F.2d 1002, 1003. A fine imposed 'must not exceed the actual loss to the complainant caused by * * * violation of the decree * * *.' Parker v. United States, 1 Cir., 1946, 153 F.2d 66, 71, 163 A.L.R. 379; Boylan v. Detrio, 5 Cir., 1951, 187 F.2d 375, 379; Christensen Engineering Co. v. Westinghouse Air Brake Co., 2 Cir., 1905, 135 F. 774, 782, and 'the imposition of a fine which bore no relation to the injury suffered * * * was unauthorized', Eustace v. Lynch, 9 Cir., 1935, 80 F.2d 652, 656, 'Such fine must of course be based upon evidence of complainant's actual loss * *', United States v. United Mine Workers of America, 330 U.S. 258, at page 304, 67 S.Ct. 677, at page 701, 91 L.Ed. 884; Christensen Engineering Co. v. Westinghouse Air Brake Co., supra, 135 F. at page 782; Boylan v. Detrio, supra, 187 F.2d at page 379. 'Unless it is based upon evidence showing the amount of the loss and expenses, the amount must necessarily be arrived at by conjecture, and in this sense it would be merely an arbitrary decision.' Christensen Engineering Co. v. Westinghouse Air Brake Co., supra, 135 F. at page 782; Norstrom v. Wahl, 7 Cir., 1930, 41 F.2d 910, 914." See also In re Independent Publishing Company, D.C.Mont. 1915, 228 F. 787.

There was no proof of the actual damages sustained by plaintiff. It is clear that plaintiff would be entitled to its costs. Gompers v. Bucks Stove & Range Co., supra. Even in the absence of proof the court should "in the very nature of things * * * be able to reach a fair conclusion as to the amount of ordinarily necessary costs and attorneys' fees to be awarded in such a case." Norstrom v. Wahl, 7 Cir., 1930, 41 F.2d 910, 914.

Accordingly defendant is adjudged in contempt and to pay a fine of $250.