No. 14926

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

IN THE MATTER OF THE CONTEMPT OF
CHARLES GRAVELEY AND RICHARD HAMMERBACKER.

---

Appeal from:   District Court of the First Judicial District,
               In and For the County of Lewis and Clark.
               Honorable Joseph B. Gary, Judge presiding.

Counsel of Record:

    For Appellant:

        McCabe and Weingartner, Helena, Montana
        J. C. Weingartner argued, Helena, Montana

    For Respondent:.

        Hull and Sherlock, Helena, Montana
        Jeffrey Sherlock argued, Helena, Montana

---

Submitted:   February 28, 1980

Decided:   July 22, 1980

Filed:  JUL 22 1980

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Petitioners Charles Graveley and Richard Hammerbacker filed a petition with this Court seeking a writ of review of a judgment of contempt found against them in the District Court, First Judicial District, Lewis and Clark County, before presiding Judge Joseph B. Gary.

The District Court found the petitioners guilty of civil contempt of court in the matters hereafter stated and ordered that each pay the sum of $200 to Lewis and Clark County to purge the contempt.

At first petitioners attempted to appeal the judgment of contempt of this Court. Upon discovering that a judgment of contempt was not appealable, State v. District Court (1919), 56 Mont. 578, 185 P. 1112, petitioners dismissed the appeal and filed this petition for review.

The facts, in the light most favorable to the decision of the District Court, are these:

Ricky Worden and Criss Allen Case were two of four defendants to be arraigned in Lewis and Clark County District Court in December 1978 in connection with a robbery that had occurred in a bar in Wolf Creek, Montana. The arraignment was to take place before District Judge Peter G. Meloy. David Hull, of Helena, had been appointed to represent Ricky Worden, and Jeffrey Sherlock, also of Helena, had been appointed to represent Criss Case.

On December 13, 1978, Ricky Worden and Criss Allen Case were brought to the Lewis and Clark County District Court courtroom for arraignment. They had previously been jailed in Malta, Montana.

The arraignment of Ricky Worden commenced sometime between 9:00 and 9:30 a.m. on December 13, 1978. At the

-2-

time of the arraignment, Worden's attorney filed his written notice of intent to rely on the defense of mental disease or defect. Upon the filing of that notice, Judge Meloy entered a verbal order that the sheriff of Lewis and Clark County transport the defendant to Warm Springs State Hospital for an evaluation examination.

The next defendant, Criss Allen Case, was also arraigned on the same charge, and his attorney, Jeffrey Sherlock filed a like notice of intent to rely on the defense of mental disease or defect. Again at this arraignment, Judge Meloy entered a verbal order that the sheriff of Lewis and Clark County immediately transport this defendant to Warm Springs State Hospital for an examination.

Charles Graveley was the county attorney acting for the state in connection with the arraignments, and Deputy Sheriff Richard Hammerbacker was the officer in charge of the two defendants at the time.

A written order for the transporting of Worden to Warm Springs was presented to Judge Meloy at the time of the Worden arraignment; however, he did not agree with the language of the proposed order and asked that it be redrafted.

Immediately following the arraignments, at approximately 9:30, Deputy Sheriff Hammerbacker took the defendants Worden and Case from the District Court Courtroom, across the street to the sheriff's office, where they were "booked out". They were then taken by Deputy Sheriff Hammerbacker to the Helena Airport, where an airplane was already warmed and gassed for the transportation of Worden and Case back to Malta. The airplane used was a four passenger craft. The pilot, Hammerbacker, and the two prisoners constituted the passenger complement on the flight.

-3-

In the meantime, two other defendants involved in the same charge were also arraigned, and similar notices of intent to rely on the defense of mental disease or defect were filed in those cases. They were represented by other attorneys. The court also orally ordered their examinations at Warm Springs. Immediately following their arraignments, they were taken to the sheriff's office, booked out and placed in an automobile. Two members of the sheriff's staff drove these two defendants to Big Sandy, Montana, where they met the airplane in which Deputy Hammerbacker was a passenger. There the two remaining defendants were transferred to the airplane and taken to Glasgow, Montana, where they were incarcerated. Deputy Hammerbacker then returned in the airplane to Helena, Montana, arriving there at about 6:00 p.m.

When attorneys Sherlock and Hull learned that their clients had been transported out of Helena, in the morning of December 13, 1978, they immediately met with Judge Peter G. Meloy, who called in County Attorney Charles Graveley. There, certain conversations occurred to which we will advert later.

On December 28, 1978, both Sherlock and Hull filed affidavits in the criminal cause involving Worden, alleging that the County Attorney had purposely defied the court's order and instead of transporting the defendants to Warm Springs for evaluation, had caused their transportation to Malta. Both Lewis and Clark District Court judges disqualified themselves in connection with the criminal contempt proceedings and Judge Gary was called in to preside.

Judge Gary met with the parties on January 15, 1979. It was then agreed that the civil contempt proceedings would

-4-

be dismissed and that attorneys Sherlock and Hull would file petitions to find Graveley and Hammerbacker guilty of civil contempt. Such petitions were filed. The matter came on for hearing before Judge Gary on February 28, 1979. After hearing, and after having received briefs and proposed findings, Judge Gary on April 24, 1979 issued his order finding both County Attorney Graveley and Deputy Sheriff Hammerbacker guilty of civil contempt of court. The District Court ordered the parties could purge themselves of contempt by each paying a fine to the Clerk of the Court. This petition for writ of review ensued.

In the February 28, 1979 hearing before Judge Gary, County Attorney Charles Graveley was first called as a witness. His counsel requested the District Court to inform him that while this was a civil contempt, it had criminal implications and that Graveley could refuse to answer any questions upon the ground that it might incriminate him. The Court so advised him. Subsequently, Graveley refused to answer questions on the grounds that the answers might incriminate him as to whether he was in the courtroom at the arraignment of Ricky Worden and Criss Case and others; as to what he heard Judge Meloy say to the various people in the courtroom with respect to the defendants referred to; as to whether he had conversations with any other person about where the defendants were to be transported; as to whether he knew where the defendants were on the date of the hearing; as to whether he knew who took the various defendants from Lewis and Clark County to where they were at that time; as to whether he had been in Judge Meloy's chambers after the arraignment was held; and as to whether Judge Meloy at that time asked him if he had ordered the defendants to be taken back to Glasgow, Malta, and Wolf Point.

The next witness called was Deputy Sheriff Richard Hammerbacker. He took the same tack, refusing to testify as

-5-

to any questions with respect to the four defendants, upon the grounds that his answers might incriminate him.

Attorney Hull was then called to the stand. He testified that he had been appointed to represent Ricky Worden. At the arraignment proceedings on December 13, 1978, he had filed a notice of intent to rely upon the defense of mental defect, or disease, and had prepared an order for the court to have his client placed in Warm Springs State Hospital. Hull testified that the judge ordered the defendants sent to Warm Springs State Hospital and asked Hull to rewrite the order to include a specific date. The oral order was made in open court on that day. At the time the oral order was made, Hull testified that the county attorney and Hammerbacker were both present. Hull testified that Graveley told the court that he wanted to send the prisoners back to Malta and the judge replied he had made the order and that these men were to be sent to Warm Springs. After the arraignment, Hull proceeded to the doorway of the courtroom where he met Hammerbacker. Hammerbacker told him, "I'm just informing you that your client is returning to Malta within the hour." Hull said to him, "You heard, the judge ordered he was going to Warm Springs today." Hammerbacker replied, "I don't care about that. I am merely informing you that your client is returning to Malta within the hour." Hull was also present in the courtroom during the arraignments of the other three defendants, and in each case, Hull testified the same verbal order was entered by the district judge to the effect that the men were to be sent to Warm Springs for evaluation.

On cross-examination, Hull testified positively that Hammerbacker was in the courtroom when the oral order was made, and that the statements attributed to Hammerbacker were made in the doorway of the courtroom on the way out.

Attorney Sherlock also testified. He had been appointed to represent Criss Allen Case. On December 13, 1978, Sherlock

-6-

testified that the four defendants were present in court and that Graveley was there throughout. Hammerbacker was in the courtroom off and on and other members of the Lewis and Clark County Sheriff's Office were there, including one of the fulltime jailers. Sherlock testified to the oral order of Judge Meloy in each case that the defendants be transferred to Warm Springs for evaluation, the objections made by the county attorney and the overruling of those objections by the District Court, continuing in effect his order for the transport to Warm Springs.

Attorney Sherlock testified that later in Judge Meloy's chambers, before noon but following the arraignments, he was present when Graveley had a discussion with Judge Meloy about the fact that the prisoners had already been taken to Malta instead of Warm Springs. He stated that Graveley had told the District Court on that day that it was at Graveley's direction that the prisoners were taken to places outside Lewis and Clark County, and not to Warm Springs.

Attorney Larry Murphy, who represented one of the other two defendants involved, testified that he was also present in the court at the time of the arraignments and heard the oral orders of Judge Meloy. He was also present in Judge Meloy's courtroom at the meeting before noon. He testified that Graveley stated emphatically that he had an agreement with the county attorney in Malta that the prisoners would be transported there immediately and that even though Judge Meloy ordered that the prisoners be transported to Warm Springs immediately, Graveley was going to have them transported to Malta.

Sheriff Charles M. O'Reilly, who took office December 15, and was not involved in the incidents of December 13, testified from the records of the sheriff's office that defendant Worden was "booked out" of the sheriff's office at 9:40 a.m. December 13, 1978; that defendant Case was "booked out"

-7-

at 9:55 a.m. on that day; and that the sheriff's office was served with a written order regarding Worden at 10:15 a.m. on December 13, 1978. He had no written orders for the other defendants until later.

After attorneys Hull and Sherlock had rested, the respondents Graveley and Hammerbacker put on their case. They called the weatherman, Max Baumgartner, who indicated that weather was closing in on December 13 and that it would have been impractical to fly a small airplane on that date; also that he had informed the pilot of the airplane of the adverse weather conditions and that if any flights were to be made they were to be made on December 13, 1978.

Deputy Sheriff Hammerbacker then took the stand. This time he did not refuse to answer under the Fifth Amendment of the United States Constitution. He testified that he understood that the defendants were to be transported back to Malta; that he had made the arrangements through the instructions of the county attorney in the week before the December 13 arraignments; and that he understood the defendants would have to be back in Malta no later than December 15, 1978. Hammerbacker testified that he was not in the courtroom when Judge Meloy issued his orders respecting the defendants. He stated that he had gone over to the sheriff's office at the request of the county attorney to research the "rap sheet" on defendant Worden. He said he was first made aware of the alleged oral order by Hull in the doorway of the courtroom. At first he testified that they had been in the sheriff's office and they had not returned to the courtroom before he met Hull. Later in his cross-examination, he stated that he had in fact come into the courtroom and talked to County Attorney Graveley before coming out again to the doorway where he met Hull. He stated that he does not take the word of defense counsel because he has been lied to so

-8-

often by defense counsel. He further described how the prisoners were taken from Lewis and Clark County and transported to their various destinations.

After the pilot of the airplane testified substantially to what we have stated foregoing, Graveley took the stand. This time he did not refuse to answer under the Fifth Amendment. He testified that arrangements had been made before the defendants had been brought to Lewis and Clark County, that they would be immediately returned to Malta. That he had made these arrangements for the four defense counsel in Malta and with the county attorney there. He stated the arrangement was that they would all be returned before December 15, 1978. (It should be stated that all four defendants were under homicide charges pending in the District Court of Phillips County.)

He testified that the first two defendants were arraigned by 9:25 a.m. on the morning of December 13; that he had asked Hammerbacker to check on the rap sheet of Ricky Worden; and that he had no other conversation with Hammerbacker. He knew that the plans had been arranged for flying the defendants out of Lewis and Clark County. He had been advised that the sheriff's office would fly the defendants from Helena as soon as possible. On his direct examination, Graveley testified he never told the sheriff's officers that under Judge Meloy's order, they were not supposed to transport the prisoners. He felt that any notice to the sheriff was the defendant's obligation or the defendant's attorney's obligation to serve the sheriff's office.

On cross-examination County Attorney Graveley testified that he had no court order to return the defendants to Malta or Glasgow. He further testified that it was not his

obligation to enforce any orders obtained by defense counsel. He testified that he made no attempt to inform the sheriff's office of the oral orders of Judge Meloy.

When Graveley was asked whether he had any conversation with the sheriff's office after the arraignment concerning the transport of the defendants to Malta, in spite of the court orders, Graveley answered he could not recall. He was then faced with a transcript from an earlier hearing in which he was asked the following questions:

> "Q. And then Judge Meloy asked you, 'Did you direct them to take them despite the order made by this court'?
>
> "And your answer was, 'We had some conversation about it. Yes. I fail to see how an oral order can be directed . . .'
>
> "Does that refresh your recollection for you as to the fact that you directed them after the order was made to transport the prisoners out of the county. A. Yes.
>
> "Q. Did you make it a formal explanation why to Judge Meloy? Why did you direct them to take them despite the order made by that court. A. I did not direct them to take anybody out of the county after the order was made by that court.
>
> "Q. You answered yes. A. I'm answering I did not direct anybody to take them out of the county.
>
> "Q. Do you want to change the answer you made? A. No I don't."

So much for the record. In this cause, Attorneys Hull and Sherlock have moved this Court to dismiss the petition for writ of review on the ground that such a writ may not issue where the District Court has not acted in excess of its jurisdiction. It is true that a writ of review or certiorari may be granted only when a trial court has exceeded its jurisdiction. State v. District Court of Second Judicial District (1900), 24 Mont. 494, 62 P. 820. However, we will follow the procedure of State v. District Court (1929), 85 Mont. 215,

-10-

278 P. 122 and treat the petition here as one for an alternative writ, in this case one for supervisory control. On that basis, we do not dismiss these proceedings on the ground that a writ of review is improvidently sought by the petitioners.

On the other hand, petitioners Graveley and Hammerbacker seek to have the judgment of the District Court vacated on the ground that their contempt is not proven beyond a reasonable doubt. However, substantial evidence is all that is required to support a judgment for contempt. In Re Burns (1928), 83 Mont. 200, 208, 271 P. 439. It is the rule that on review of contempt proceedings, the Supreme Court determines only whether the District Court acted within jurisdiction, and whether or not the evidence supports the finding and order. State v. District Court of Twelfth Judicial Dist. (1968), 151 Mont. 41, 43, 438 P.2d 563; State v. Second Judicial Dist. Court (1935), 99 Mont. 209, 41 P.2d 1113.

Petitioners also contend that the contempt proceedings should be dismissed because this is a case of criminal contempt, and the procedures for instituting a civil contempt case were not followed.

Section 3-1-501, MCA, defines what acts or omissions are contempts. Section 45-7-309, MCA, defines what offenses constitute criminal contempt. In general, the definitions include the same kinds of acts or omissions which tend to interrupt the orderly flow of trials or proceedings before courts or to abuse their authority. The punishment for a contempt under section 3-1-501, must not exceed five days in jail, or a fine of $500 or both. The punishment for criminal contempt is not to exceed a six month sentence or $500 or both.

Section 3-1-511, MCA, provides for the procedure to be followed when contempt is committed in the presence of the court. In that situation, the contempt may be punished summarily but an order must be made by the court reciting the facts which occurred. Section 3-1-512, MCA, sets out the procedures to be followed when a contempt is made outside the presence of the court. This section calls for the submission of affidavits of the facts constituting contempt, after which a warrant is to be issued. In this case, instead of arresting Graveley and Hammerbacker by warrant of attachment, the District Court issued an order to show cause.

The United States District Court of Montana in 1957 held that contempts are neither wholly civil nor altogether criminal. See United States v. Montgomery (D. Mont. 1957), 155 F.Supp. 633.

It appears in this case that the petitioners were charged with an indirect or constructive contempt. That is, the contempt occurred outside the presence of the court. In a constructive contempt, the essence of whether the court's order has been abused is whether the party accused had knowledge of the order. Hand v. Hand (1957), 131 Mont. 571, 312 P.2d 990.

We do not find a jurisdictional defect in the contempt proceedings against the petitioners because an order to show cause was issued instead of a warrant. The court took judicial notice of the affidavits that had been filed in the criminal contempt charges against the petitioners, and the jurisdiction of the District Court to hear the matter was affirmed when the petitioners appeared in response to the order to show cause.

The question of the knowledge of the petitioners of the District Court's oral order was one for determination in

-12-

the contempt proceedings before the District Court. It is certain that County Attorney Graveley had knowledge of the order because he was in court when the order was made. The testimony of Hull and Sherlock, which the District Court apparently accepted, also reflected that Hammerbacker was in fact present when the order was made. Substantial evidence supports the findings and order of the District Court. State v. District Court of Twelfth Judicial Dist., supra. The motion of Graveley and Hammerbacker in the District Court to dismiss the contempt proceedings is the same as contending that the evidence is insufficient to sustain the findings of the court. As we have already stated there is substantial evidence supporting the judgment.

The petitioners also claim that the court erred in refusing an offer of proof respecting deceptions by other attorneys involving Deputy Sheriff Hammerbacker. The District Court refused to hear such evidence unless it involved the attorneys in this case, which was not the situation. The court did not commit error in refusing that offer of proof.

The court also refused evidence of statements made to Hammerbacker by pilot Donald Thelan. Thelan testified fully as to the weather situation and the necessity of making both flights on December 13, 1978. The proferred evidence had no probative value as to whether both Graveley and Hammerbacker were acting in spite of the court's oral order and so was properly refused by the court as irrelevant.

In the civil contempt proceedings, the type, character and extent of punishment rests on the trial court's discretion as measured by the showing made. United States v. Montgomery, supra. In light of the findings made by the court and the

-13-

evidence supporting them in this case, the District Court was justified in assessing a sum of $200 against each of the petitioners in order to purge the contempts.

The petition for writ is denied in any form. These proceedings are dismissed.

_____
                                        Justice

We Concur:

_Frank I. Haswell_
Chief Justice

_John Conway Harrison_

_Daniel J. Shea_

_Gene B. Daly_
Justices