No. 89-256

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

DONALD C. MARKS,

        Relator,

    -vs-

THE FIRST JUDICIAL DISTRICT COURT
OF THE STATE OF MONTANA, IN AND FOR
THE COUNTY OF BROADWATER, THE HONORABLE
HENRY LOBLE, PRESIDING,

        Respondent.

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Relator:

        Ted J. Doney; Doney & Thorson, Helena, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        James Yellowtail, Asst. Atty. General, Helena
        John T. Flynn, County Attorney, Townsend, Montana
        Richard Feisthamel, Water Commissioner, Townsend,
        Montana

Submitted on Briefs: Aug. 17, 1989

Decided: October 19, 1989

Filed:

_____
          Clerk

FILED

'89 OCT 19 AM 11 21

ED SMITH, CLERK
MONTANA SUPREME COURT

Justice Fred J. Weber delivered the Opinion of the Court.

Relator applies for a writ of certiorari to set aside a contempt of court order from the First Judicial District Court of Montana, Broadwater County. We deny the writ.

The issues are:

1. Did the District Court err in finding that defendant was in contempt of court?

2. Did the District Court err in denying defendant's motion for a continuance?

3. Did the District Court err in denying defendant's motion for substitution of judge?

On October 7, 1988, Judge Loble, sitting as water court judge in place of Judge Lessley, held a show cause hearing, ordering Mr. Marks to show cause why he should not be held in contempt for failing to obey the orders and directives of the Water Commissioner. This hearing was scheduled based upon an affidavit by Mr. Feisthamel, the Water Commissioner for Confederate Creek, Broadwater County, Montana. In substance, this affidavit stated that on September 23, 1988, the Water Commissioner turned off water at Mr. Marks' diversion point, but that Mr. Marks turned the water back on without authority on September 25, 1988. On that same day the Water Commissioner turned the water off a second time, whereupon Mr. Marks totally removed the headgate from the diversion point on September 26, 1988. The Water Commissioner also swore that on September 26 he told Mr. Marks to shut off the water, but that Mr. Marks refused. The affidavit further stated that when told that he was being placed under arrest, Mr. Marks told the Water Commissioner to "get lost" and then entered his residence.

Prior to the hearing, Mr. Marks obtained counsel. On October 3, 1988 counsel for Mr. Marks sent a letter to the

2

court requesting a continuance because he had a prior commitment on October 7. Counsel also requested a substitution of judge. On October 6, Mr. Marks' counsel received a letter from the court denying these requests. On the day of the hearing, October 7, Mr. Marks appeared before the court without counsel. The court found him in contempt of court for failing to obey an order of the Water Commissioner. He was ordered to pay a $250 fine or spend two days in the county jail. From this order Mr. Marks appeals.

I

Did the District Court err in finding that defendant was in contempt of court?

In reviewing a contempt appeal, this Court's standard of review is whether substantial evidence supports the judgment of contempt. Matter of Graveley (1980), 188 Mont. 546, 555, 614 P.2d 1033, 1039. This Court has also stated:

> On reviewing a contempt citation by writ of certiorari, we are limited to the following considerations: whether the lower court had jurisdiction to issue the order and secondly, whether there is evidence supporting the same.

State ex rel., Foss v. District Court (1985), 216 Mont. 327, 331, 701 P.2d 342, 345.

This case involves interference with the actions of a water commissioner's distribution of water and is governed by § 85-5-406, MCA, which states:

> Interference with actions of commissioner. Any person opening or closing a headgate after being set by such commissioner or who in any manner interferes with such commissioner in the discharge of his duties shall be deemed guilty of contempt of court and may be proceeded against for contempt of court as provided in contempt cases.

Mr. Marks contends that the contempt charge in this case was criminal in nature, triggering a requirement that the court find he acted "knowingly or purposely" when he violated the orders of the Water Commissioner. He contends that the evidence is insufficient to prove that he consciously disregarded any orders.

In Matter of Graveley, we stated that "contempts are neither wholly civil nor altogether criminal," citing United States v. Montgomery (D.Mont. 1957), 155 F.Supp. 633. Matter of Graveley, 614 P.2d at 1039. Further, the present case involves constructive contempt since the conduct occurred outside the presence of the court. In Matter of Graveley, the Court stated:

> In a constructive contempt, the essence of whether the court's order has been abused is whether the party accused had knowledge of the order. (Citation omitted.)

Matter of Graveley, 614 P.2d at 1039.

In Matter of Graveley, two county attorneys were verbally ordered by a district court to transport two defendants to Warm Springs Hospital for mental evaluation. Instead, the attorneys took them to Malta where they had charges pending. On the issue of whether the attorneys had knowledge of the court's oral order, the district court found it sufficient that the attorneys were present in court when the order was made. See generally, Matter of Graveley.

In the present case, at the hearing on the order to show cause, the Water Commissioner testified that he turned off Mr. Marks' water on September 23, 1988 because Mr. Marks was not in compliance with regulations to have water at that time. He stated that he did not contact Mr. Marks at that time. However, two days later while moving debris out of the stream, Mr. Feisthamel noticed that Mr. Marks' headgate was

4

again open. The Water Commissioner then testified that on the 26th of September, the headgate was completely removed. Mr. Feisthamel testified that he went to Mr. Marks and told him he was "in trouble" for opening his own headgate, and then removing it entirely, and that he was not in compliance with the law. Mr. Feisthamel stated that after an argument, he informed Mr. Marks that he had authority to arrest him and he could consider himself under arrest. He stated that Mr. Marks told him to "get lost," and entered his residence. This testimony by Mr. Feisthamel was sufficient to establish that Mr. Marks had knowledge of the Water Commissioner's directives and consciously disregarded them. The testimony further established that Mr. Marks resisted arrest and acted contemptuously toward the Water Commissioner.

In its order finding Mr. Marks guilty of contempt the court reviewed the history of Mr. Marks' disputes with water commissioners and water courts. The court stated:

> Water user Marks has been a participant in many of the controversies brought before the undersigned judge since he assumed jurisdiction in this case many years ago. Sometimes Marks has been represented by counsel and sometimes he has appeared pro se. In 1983 Marks sought the removal of water commissioner Hensley and objected to paying his charges. In 1984 he contested Hensley's reappointment and proposed another person for commissioner. In 1985 he again contested the reappointment of Hensley. In 1986 he filed a complaint against Hensley. In 1987 a hearing was held concerning Marks' failure to pay water commissioner fees. . . In 1988 Marks has been in an almost constant and defiant dispute with water commissioner Feisthamel.
>
> On June 7, 1988, Marks, through his counsel, recognized that the undersigned was presiding judge in this case by filing a Section 85-5-301, MCA complaint before him and at the same time procuring an order setting the complaint down for hearing. The

5

> hearing was held on June 10, 1988, and Marks ap-
> peared and participated therein with counsel Doney.
> In addition, Marks, acting pro se, filed a state-
> ment which contended that the water commissioner
> owed him $632.32 for moving a beaver dam. The
> Court subsequently and after hearing found in its
> order of July 15, 1988, that Marks' purpose in
> filing this statement was "to harass and embarrass
> an officer of this Court, i.e., the water commis-
> sioner, Richard Feisthamel." Marks was directed to
> pay water commissioner fees in the amount of
> $149.68, and if he failed to do so the commissioner
> was directed not to deliver any water to Marks.

These extensive findings show Mr. Marks' continuing refusal to abide by the water commissioners' directives, and demonstrates Mr. Marks' prior knowledge of the procedures involved with water commissioners and water courts. In view of this history we conclude that there is no basis in fact for Mr. Marks' contention that the court failed to find he acted "knowingly and purposely."

We conclude that there was substantial evidence from which the lower court could find that Mr. Marks had knowledge of the Water Commissioner's orders and directives. We affirm the District Court's determination that Mr. Marks was in contempt of court.

## II

Did the District Court err in denying defendant's motion for a continuance?

On September 27, 1988, the court issued an order to Mr. Marks to appear on October 7, 1988, to show cause why he should not be held in contempt of court. On October 3, counsel for Mr. Marks sent a letter notifying the court that his schedule would prevent him from appearing at the hearing, and requesting a continuance. The day before the hearing Mr. Marks' counsel received notice from the court denying this

6

request. Mr. Marks appeared at the hearing without counsel, and did not present any evidence on his own behalf.

Mr. Marks contends that the present charge is criminal in nature, and that he had a constitutional right to counsel which he was denied. As previously stated, a contempt proceeding may be quasi-criminal in nature. Additionally, since the present case involves constructive, rather than direct contempt, some due process is required. This was explained in Lilienthal v. District Court, Etc. (1982), 200 Mont. 236, 242, 650 P.2d 779, 782, as follows:

> Unless the act constituting contempt occurs in open court where immediate punishment is necessary to prevent demoralization of the court's authority, due process requires:
>
> ". . . that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." In Re Green (1962), 359 [369] U.S. 689 691-92, 82 S.Ct. 1114, 1116, 8 L.Ed.2d 198, 200. (Citation omitted.)

The right to counsel however, has generally been held to mean that one charged with contempt of court is entitled to a "reasonable opportunity to employ counsel in contempt proceedings." See, Annot. 52 ALR 3d 1002, 1005, § 2(a).

In arguing that he was denied counsel, Mr. Marks relies on Lilienthal. In that case the defendant received notice on Thursday, April 2, to show cause at 10:00 a.m. Monday, April 6. Mr. Lilienthal appeared at the hearing without counsel and informed the court that he had been unable to reach his attorney on the previous Friday. The court held the hearing, nevertheless. On appeal, this Court determined that Mr.

7

Lilienthal only had one working day on which to obtain counsel, which was not reasonable opportunity.

In the present case Mr. Marks had over a week to obtain counsel. He received notice of the charge on September 29, 1988, and the hearing was not held until October 7, 1988. Five days was held to be adequate opportunity to obtain counsel for contempt proceedings in Ungar v. Sarafite (1964), 376 U.S. 575, 590, 84 S.Ct. 841, 850, 11 L.Ed.2d 921, 931. See also Nilva v. United States (1957), 352 U.S. 385, 395, 77 S.Ct. 431, 437, 1 L.Ed.2d 415, 423 (four days notice sufficient). We conclude that Mr. Marks had reasonable opportunity to secure counsel.

We also conclude that the court properly denied the continuance. The District Court has broad discretion in whether to grant a continuance. In re Marriage of Robbins (1985), 219 Mont. 130, 711 P.2d 1347, (affirming trial court's denial of a continuance in a proceeding involving contempt charges); Sloan v. State (Mont. 1989), 768 P.2d 1365, 46 St.Rep. 214, (court has broad discretion to grant continuance in criminal proceedings). In its order denying the continuance the court stated its reasons for denial. Mr. Marks requested that the hearing be continued until November 4th or 18th, approximately a month after the scheduled hearing. The court's letter of October 5, denying the continuance explained that "[g]ranting the motion for continuance would have left Marks in sole possession and use of all the waters of the creek for over a month at a time when very little remained on the 1988 irrigation season." We affirm the court's denial of the motion to continue.

III

Did the District Court err in denying defendant's motion for substitution of judge?

8

On October 3, 1988, Mr. Marks filed a motion for sustitution of judge. This request was not granted. The show cause hearing was held and judgment was entered against Mr. Marks. The court however, granted a stay of judgment to allow Mr. Marks' counsel an opportunity to brief the issue of whether the substitution should have been allowed. After considering Mr. Marks' contentions, the court denied the motion. In its order the court found that Mr. Marks' motion was not timely, that he was not legally entitled to a substitution of judge, and further noted that where diversion of water is involved, justice could be flouted if one were allowed to delay proceedings by motions of this type.

Mr. Marks contends that the motion should have been granted pursuant to § 3-1-804(1), MCA, which provides for substitution of district judges. This statute, however, does not apply to water judges. See Final Order on Rules for Disqualification and Substitution of Judges (Mont. 1988), 45 St.Rep. 1685, 1688. Rather, the disqualification of a water judge is governed by § 3-7-402, MCA, which requires a showing of cause.

Mr. Marks argues, however, that the District Court was not sitting as water judge. He urges that the transfer of jurisdiction from Judge Lessley to Judge Loble was not effective because the requirements of § 3-7-213, MCA, were not met. That statute provides:

> Designation of alternate judge. The water judge may designate a district judge, retired district judge, or another water judge to preside in his absence on his behalf as water judge for the immediate enforcement of an existing decree or the immediate granting of extraordinary relief as may be provided for by law upon an allegation of irreparable harm.

9

Mr. Marks contends that unless the water judge was absent and there was a need to grant immediate relief, no valid transfer of jurisdiction was made.

This Court has previously rejected this construction of § 3-7-213, MCA, in Granite Ditch Co. v. Anderson (1983), 204 Mont. 10, 16, 662 P.2d 1312, 1316. In that case we stated:

> The provisions of section 3-7-213, MCA, governing designation of an alternate judge, must be interpreted in conjunction with the provisions of section 3-7-501. When the two sections are integrated we find that the intent of the legislature was to provide that a district judge, sitting as a water judge, could not serve beyond the boundaries of his division absent the showing required by section 3-7-213, MCA.

We conclude that Judge Loble was properly sitting as water judge, and properly denied Mr. Marks' request. We further note that the court's rationale was eminently reasonable given the circumstances. We affirm the District Court's denial of the motion for substitution of judge.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

10

John G. Shelby

P. C. Gulbrandson

Justices

11