No. 92-605

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

PAMELA C. PRESCOTT,

      Petitioner and Respondent,

  and

GREGORY W. PRESCOTT,

      Respondent and Appellant.

FILED

JUL 8 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Christopher Daly, Attorney at Law, Missoula, Montana

    For Respondent:

        Sydney E. McKenna, Patterson, Marsillo, Tornabene,
Schuyler & McKenna, Missoula, Montana

               Submitted on Briefs:  March 18, 1993

                      Decided:  July 8, 1993

Filed:

_____
         Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Gregory W. Prescott appeals from an order of the Fourth Judicial District Court, Missoula County, denying his request for a modification of the dissolution decree dated June 13, 1988. Gregory also appeals the District Court's order finding him in contempt for failing to pay child support, maintenance, and taxes. The District Court sentenced Gregory to jail for 15 days to be suspended for six months to allow him to pay back taxes.

We affirm.

The parties raise four issues for this Court's consideration.

1. Did the District Court err in denying Gregory the right to counsel during the contempt proceedings?

2. Did the District Court err in not staying the contempt proceedings until the resolution of a pending criminal charge in Oregon?

3. Did the District Court err when it offered to be sworn and testify on the record during the contempt proceedings?

4. Should this Court award costs and attorney fees to respondent Pamela Prescott?

This action arises out of a decree of dissolution. The relevant portions of the decree provided that Gregory pay $400 per month per child in support and that he pay $800 per month in maintenance. Gregory also agreed to pay all current and back state and federal taxes that the parties owed. Since the entry of the divorce decree, Gregory has not made any maintenance payments and

2

his record in child support payments is poor. To date, Gregory has failed to meet his obligations, and at the time of the hearing owed in excess of $70,000 in back maintenance and child support. Because Gregory did not pay the parties' tax liabilities, the IRS has withheld three years of tax refunds from Pamela.

Pamela and the parties' four children have suffered considerably because of Gregory's failure to make payments. The family became dependent upon family and friends to meet their daily needs. During the separation, Pamela attended a Displaced Homemaker Program and worked as a maid in Missoula. The family qualified for food stamps and other government assistance. Pamela's relatives purchased food for the family. In 1987, the teachers at the children's grade school voted the children the "most needy," which allowed the family to receive free winter clothing.

Gregory's failure to pay child support and maintenance forced the children to help Pamela support the family. The oldest child, who has reached the age of majority, quit college and went to work at a local fast food restaurant. The second child, a high school student, worked part-time at a restaurant. The third child did his part by doing odd jobs after school.

After the dissolution was final, the family moved to LaPine, Oregon, where Pamela initially cleaned houses to get by. The family lived in two borrowed travel trailers parked at Pamela's sister's house. With the help of an aunt who contributed $300 a

3

month for a year, the family moved into a rental home. After the dissolution, Pamela sold a parcel of real estate, but the income from the sale is only $250 a month. Pamela and the children still depend on relatives and friends for food, clothing, and money.

Gregory has bachelor of science degrees in geology and mathematics. During the separation and after the dissolution, Gregory voluntarily underemployed himself so that he could work on his invention. The record shows that Gregory can earn a good income as a geologist, having earned $70,000 in 1986. He currently works as Chief Geologist for the Colville Confederated Tribes in Nespelm, Washington, and earns $24,000 a year.

In March 1989, the Washington State Department of Social and Health Services held a hearing and found Gregory $20,000 in arrears for back child support and maintenance. In April 1992, the State of Oregon filed felony charges against Gregory for criminal neglect of the children. Trial on those charges was scheduled for December 1992.

On April 30, 1992, Gregory filed a motion to modify child support. On July 31, 1992, Gregory also filed a motion to amend the original dissolution decree. On September 16, 1992, Pamela filed a motion to hold Gregory in contempt for violating the court's order and decree of dissolution dated June 13, 1988. On September 29, 1992, the court conducted a show cause hearing and considered Gregory's motions. Gregory appeared pro se, and Pamela appeared with counsel.

4

On October 8, 1992, the court issued its order. By agreement of the parties, the court lowered child support from $400 a month per child to $300 a month per child, which is within the mandatory SRS Guidelines. The court denied Gregory's motion to amend the decree of June 13, 1988. The court found Gregory in contempt for violating the June 13, 1988, order and decree and sentenced him to 15 days in jail, which the court suspended for six months. During the suspension, Gregory had the opportunity to pay off the back taxes owed and purge the contempt order. Gregory appeals from this order.

## MOTION TO DISMISS THE APPEAL

On February 18, 1993, Pamela filed a motion with this Court to dismiss Gregory's appeal of the lower court's contempt order pursuant to § 3-1-523, MCA. Both parties addressed the motion in their appellate briefs.

We have stated that although contempt orders by the district court are final and usually not reviewable by this Court except through writ of certiorari, as required by § 3-1-523, MCA, we have made an exception for family law cases. In re Marriage of Boharski (Mont. 1993), 847 P.2d 709, 713, 50 St. Rep. 161, 163. We limit our review of the contempt order to examining the record to see whether the district court acted within its jurisdiction and whether the evidence supports the contempt. In re Marriage of Sullivan (Mont. 1993), 50 St. Rep. 648, 651. Therefore, we deny the motion to dismiss the appeal.

5

I.

Did the District Court err in denying appellant the right to counsel during the contempt proceedings?

At the beginning of the contempt proceedings, Gregory requested the District Court to appoint counsel, which was denied. Gregory contends that the contempt in this case is criminal in nature and that the District Court violated his constitutional right by not appointing counsel at public expense. Because Gregory works as a geologist earning $24,000 a year, his argument that he is indigent is without merit.

A contempt proceeding may be quasi-criminal in nature. Because this case involved a contempt violation outside the presence of the court, it is considered a constructive contempt, and therefore, due process is required. Lilienthal v. District Court (1982), 200 Mont. 236, 242, 650 P.2d 779, 782. Constructive contempt requires the following due process requirements:

> "[T]hat one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation."
>
> The right to counsel however, has generally been held to mean that one charged with contempt of court is entitled to a "reasonable opportunity to employ counsel in contempt proceedings." [Citations omitted.]

Marks v. First Judicial District (1989), 239 Mont. 428, 433-34, 781 P.2d 249, 252 (quoting Lilienthal, 650 P.2d at 782).

6

In this instance, we concern ourselves with whether Gregory had a "reasonable opportunity to employ counsel" prior to the contempt proceedings. The court issued its order to show cause on September 17, 1992. Gregory was served by certified mail on September 22, 1992. The show cause hearing occurred on September 29, 1992. Gregory had seven days in which to obtain counsel.

We have discussed this issue at length in Marks and Lilienthal. In Marks, this Court found that the defendant had a reasonable opportunity when he had over a week to obtain counsel. Marks, 781 P.2d at 252. We held that five days' notice was a reasonable opportunity to obtain counsel for contempt proceedings. Marks, 781 P.2d at 252 (citing Ungar v. Sarafite (1964), 376 U.S. 575, 590). The United States Supreme Court considered that a four day notice provided reasonable opportunity to obtain counsel. Nilva v. United States (1957), 352 U.S. 385, 395. We have held, however, that when a defendant only had one working day notice he was denied an adequate opportunity to obtain counsel. Lilienthal, 650 P.2d at 782. Therefore, we hold that seven days' notice of the contempt hearing allowed a reasonable opportunity for Gregory to obtain counsel.

II.

Did the District Court err in not staying the contempt proceedings until the resolution of a pending criminal charge in Oregon?

7

Gregory filed his motions to modify child custody and amend the decree and requested a hearing. After the court set the hearing, Pamela then filed her motion for the court to issue a show cause order. The court held the hearing on the same day for both parties' motions. The court granted one of Gregory's motions to modify child custody and denied his motion to amend the decree. The court then proceeded to the show cause hearing. The following exchange took place between Gregory and the Court.

> MR. PRESCOTT: Well, I am not putting conditions on you, Your Honor; I am just saying that I am willing to accept service of that and forego any complaints about timeliness, providing that its heard at the end --

> THE COURT: You are willing to proceed, then, on the Order to Show Cause?

> MR. PRESCOTT: Yes. Yes, your Honor.

As the transcript shows, Gregory consented to proceed with the show cause hearing. He now complains that the court erred by not staying the proceedings until criminal charges pending against him in the State of Oregon were resolved. Gregory never made a motion to stay the proceedings but argues that the court should have acted *sua sponte* to suspend the proceedings.

This Court has consistently held that it will not normally consider objections which parties present for the first time on appeal. City of Billings v. Skurdal (1986), 224 Mont. 84, 88, 730 P.2d 371, 373, *cert. denied*, 481 U.S. 1020 (1987). Here, Gregory did not object to the District Court proceeding, and in fact, actually

8

agreed to its continuation. Therefore, we hold that the District Court did not err in not staying the contempt proceedings until the resolution of a pending criminal action in Oregon.

### III.

Did the District Court err when it offered to be sworn and testify on the record during the contempt proceedings?

During the contempt hearing, the District Court offered to testify regarding whether Gregory agreed to the original dissolution settlement agreement in court as the record reflects. Gregory argued during the hearing that he agreed he would only try to make child support payments. In its findings, the District Court noted its willingness to testify regarding the parties' understanding relating to the settlement agreement. Gregory now contends that the District Court's offer to testify showed the court's bias in this matter and that the court's denial of Gregory's motion to amend the dissolution decree should be reversed and remanded.

This Court confronted a similar question in State ex rel. Moser v. District Court (1944), 116 Mont. 305, 151 P.2d 1002. In Moser, a pro se litigant faced the district court during contempt proceedings. The judge presided over his court, testified in defense of his acts relating to the contempt, and ruled on objections made to his testimony and exhibits. Moser, 151 P.2d at 1005. We held that a trial judge generally is not a competent witness qualified to testify for or against either party in an

9

action or proceeding pending in his court and tried before him. _Moser_, 151 P.2d 1007. However, we noted that this rule is not applicable to direct contempt proceedings, yet probably would be pertinent in cases of constructive contempt. _Moser_, 151 P.2d 1007-08.

_Moser_ is distinguishable from the present case. The District Court did not take the stand and testify on its behalf. We hold that the District Court did not err when it offered to testify during the contempt proceedings. We deny costs and attorney fees.

We affirm.

_____
Justice

We concur:

_____

_____

_____
Justices

10

Justice Terry N. Trieweiler specially concurring.

I concur with the result of the majority opinion. However, I do not concur with all that is said therein.

Specifically, I disagree with that part of the majority opinion which either holds or implies that an indigent person cited for contempt has only the right to "employ counsel," and no right to court-appointed counsel.

To grant a right to counsel to a person cited for contempt, but to deny court-appointed counsel for someone who cannot otherwise afford to employ counsel, is to render the right meaningless. I agree with the Fifth Circuit Court of Appeals decision in *Ridgway v. Baker* (5th Cir. 1983), 720 F.2d 1409, 1413-15, where it stated that:

> The Constitution's fourteenth amendment guarantee of due process incorporates the sixth amendment assurance that the accused in a criminal prosecution has the right to counsel. This imposes a duty on the state to provide counsel to a person accused who, because of indigency, cannot afford a lawyer. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). This right extends to every case in which the litigant may be deprived of his personal liberty if he loses. *Lassiter v. Department of Social Services*, 452 U.S. 18, 25, 101 S.Ct. 2153, 2158-59, 68 L.Ed.2d 640, 648 (1981).
>
> The right to counsel turns on whether deprivation of liberty may result from a proceeding, not upon its characterization as "criminal" or "civil.". . .
>
> The state's argument that the contemnor imprisoned only for civil contempt has, in the aphoristic phrase, "the keys of his prison in his own pocket," ignores two salient facts: that the keys are available only to one who has enough money to pay the delinquent child support and that, meanwhile, the defendant, whatever the label on

11

his cell, is confined. If the court errs in its determination that the defendant has the means to comply with the court's order, the confinement may be indefinite. Such an error is more likely to occur if the defendant is denied counsel. Viewed in this light, a civil contempt proceeding may pose an even greater threat to liberty than a proceeding labeled "criminal," with a correspondingly greater need for counsel.

. . . .

If the parent is indeed indigent the state may obviate the need for counsel by announcing that imprisonment will not result from the proceeding. *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). If it holds the threat of jail over the defendant, however, it must accord the defendant facing it due process, including the right to counsel.

. . . .

. . . If, however, imprisonment, by whatever process it is adjudicated, is the possible result of a proceeding, the defendant who is threatened with jail has the right to a lawyer.

The Ninth Circuit Court of Appeals has also recognized that due process requires that court-appointed counsel be provided to an indigent who is cited for contempt. *See Henkel v. Bradshaw* (9th Cir. 1973), 483 F.2d 1386.

Therefore, I disagree with that part of the majority opinion which suggests that appellant had only the right to "employ counsel" and no right to court-appointed counsel, if he had established his indigency.

However, I concur with the result of the majority opinion because in this case the evidence established that appellant was not indigent. At the time of trial, he was being paid at the net rate of $24,000 per year. Based on that amount of income, he did

12

not meet the criteria for indigency, and was not entitled to court-appointed counsel.

For these reasons, I specially concur with the majority opinion.

_____
Justice

13

July 8, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


CHRISTOPHER DALY
Attorney at Law
101 E. Broadway, Suite 200
Missoula, MT 59802


SYDNEY E. McKENNA
Patterson, Marsillo, Tornabene, Schuyler & McKenna
103 South 5th East
Missoula, MT 59801


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy