No. 90-364

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA ex rel. TERESA McCANN O'CONNOR,
Deputy County Attorney for Yellowstone County for
the State of Montana,

Petitioner,

-v-

THE DISTRICT COURT OF THE THIRTEENTH JUDICIAL
DISTRICT OF THE STATE OF MONTANA, in and for
the County of Yellowstone, and the Honorable
District Judge Robert Holmstrom, Jr.,

Respondents.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Teresa McCann O'Connor, Deputy County Attorney,
Billings, Montana

For Respondent:

Marcia K. Good Sept, Thirteenth Judicial District,
Billings, Montana

Original Proceeding: August 16, 1990

Decided: September 27, 1990

FILED

'90 SEP 27 AM 11 56

ED SMITH, CLERK
MONTANA SUPREME COURT

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of this Court.

Teresa McCann O'Connor (Ms. O'Connor) Deputy County Attorney for Yellowstone County, seeks a writ of certiorari for the review of the order of the District Court of Yellowstone County dated July 16, 1990, finding her in contempt of court for her failure to obey a direct order of the court and fining her $200. We affirm the finding of contempt by the District Court and refuse the issuance of the writ of certiorari.

The contempt with which we are here involved is a part of one of a series of drug cases in Yellowstone County which are referred to as "Operation Snowball." Hal Turner was the confidential informant whose information was a foundation for the Operation Snowball cases.

We will set forth various findings and conclusions of the District Court in its Findings of Fact, Conclusions of Law and Order, dated July 16, 1990. We have carefully reviewed the transcripts before us of the hearings before the District Court, as well as the "intake interview" of Mr. Turner, which demonstrate that the findings of fact of the District Court are based upon substantial evidence. By order dated February 28, 1990, the District Court set evidentiary hearings for Tuesday, March 13, 1990, upon the defendant's Motions to Dismiss and to Produce. That order contained the following statement:

> 3. That Harold Hanser, County Attorney of Yellowstone County and Teresa McCann O'Connor, Deputy County Attorney of Yellowstone County appear at said time to show cause, if any they may have, <u>why sanctions</u>

2

<u>pursuant to § 46-15-329, MCA, should not be imposed</u>.
(Emphasis supplied.)

Following are summaries of findings and conclusions of the District Court: Sometime prior to 1987, a drug enforcement unit within Yellowstone County's Sheriff's Department was created and the unit from time to time conducted joint operations with DEA, a federal drug enforcement agency. Sergeant Newell of the Sheriff's Office was in charge of the drug unit for more than two and one-half years. The drug unit used confidential informants. In January 1989, Hal E. Turner contacted officers and on January 3, 1989, Sergeant Newell conducted an intake interview which was recorded, transcribed into 70 pages, and later signed by Mr. Turner. The practice of Sergeant Newell was to create as a part of the records of the Drug Unit, a file on each confidential informant and to place the entire intake statement in that file. Sergeant Newell estimated 12 to 14 intake statements had been taken and that the existence of those statements had not been disclosed to the Yellowstone County Attorney's office when the "investigative file" concerning each of the cases was delivered to the County Attorney's office. He also testified that the decision as to whether or not to disclose the existence of the statements was his to make. Mr. Turner was used by the Sheriff's Office and DEA as a confidential informant in Operation Snowball which resulted in 41 cases being filed in state court. The 41 cases listed a "confidential informant" without disclosing Mr. Turner's identity.

During January 1990, Ms. O'Connor was preparing for the

3

Standley trial and Sergeant Newell provided her with the 70 page Turner statement,and told her that it was considered to be an intelligence file which they did not wish to have disclosed. Ms. O'Connor read the statement and advised Sergeant Newell that the statement was not discoverable in connection with the Standley case because she did not feel the statement contained exculpatory or inculpatory information or information which would provide a basis for impeachment.

District Court Finding VII is a key finding:

## VII

On February 9, 1990, an Omnibus hearing was held in consolidated causes, DC 89-281 and DC 89-325, State v. Timothy Evenson; O'Connor appeared at the Omnibus hearing and participated in the completion and signing of what is generally referred to as the "Omnibus Form", a printed document entitled "Action Taken (Omnibus Hearing); among other things, <u>the form reflects that the Defendant "requests and moves for . . . (b) discovery of the names of State's witnesses and their statements"</u>; further, that the Court granted the Defendant's Motion for such information; <u>at the time of the Omnibus hearing, O'Connor knew of the existence of the Turner statement, had a copy thereof, but failed to produce it or inform the Court or defense counsel of its existence.</u> (Emphasis supplied.)

The findings of fact are further summarized: After the omnibus hearing Ms. O'Connor met with Chief Deputy County Attorney Bradley and gave him various information including a copy of the Turner statement, with a note which stated in part that Sergeant Newell did not want the interview turned over to defense counsel on the Snowball cases. She told him she found no problem with that, there was no exculpatory or inculpatory information included which had not been turned over. Later on the same day, Mr. Bradley met with

4

Yellowstone County Attorney Hanser, and advised him of the Turner statement; and they decided to advise all defense counsel in the Snowball cases of the existence of the Turner statement and to provide a copy to each of the district judges of Yellowstone County. On February 23, 1990, motions to produce the statement and to dismiss several informations were filed. With regard to the hearing on March 13 and 14, 1990, the findings further stated:

> Hanser testified he did not know of the existence of the statement until the afternoon of February 9, 1990, and had he been aware of it, he would have put defense counsel on [notice] of its existence and asked the Court to examine the statement and determine what part, if any, should be released to the Defendant in each specific case; Bradley testified that he felt, as "I, a prosecuting attorney could not make a determination of what should or should not go to defense counsel" and that "The best thing to do was to let defense counsel have a shot at it" and this is why he provided each of the five (5) Judges with a copy of the statement and notified defense counsel of its existence; . . . O'Connor testified that it was her job to decide whether or not defense counsel should even be made aware of the existence of intelligence statements; further, that she did not turn over the statement because Officer Newell had asked her not to and she had given him an opinion that it did not need to be.

The court found that no evidence had been submitted that any portion of the Turner statement should not be furnished, and entered its Conclusions of Law which provided that the defendants were entitled to the production of the entire unedited Turner statement pursuant to § 46-15-328, MCA, and to the Order of the Court contained upon the Omnibus Form directing "discovery of the names of the State's witnesses and their statements." The court further concluded that the fact that County Attorney Hanser and Deputy County Attorney Hoefer were unaware of the existence of the

5

Turner statement constituted a showing why the sanctions provided by § 46-15-329, MCA, should not be imposed upon them. With regard to Ms. O'Connor, the court concluded:

> 5. The failure of Deputy County Attorney O'Connor to disclose the existence of the Turner statement to the Court at the time of the Omnibus hearing when she had been issued a direct order by the Court to do so, as part of the action taken at the Omnibus hearing constitutes a contempt of the Court, as set forth in 3-1-501(1)(e), MCA; that as punishment for her contempt, a fine of Two Hundred and No/100ths Dollars ($200.00) should be imposed upon Deputy County Attorney O'Connor.

As a result the court ordered that Ms. O'Connor was found in contempt of court for her failure to obey a direct order of the court, a fine of $200 was imposed and she was directed to pay the fine to the Clerk of the District Court within five days from July 16, 1990. She has not paid that fine.

In its memorandum the District Court discussed the history of discovery in criminal cases and pointed out that § 46-15-322, MCA, as adopted in 1985 stated in pertinent part:

> **Disclosure by prosecution.** (1) Upon arraignment in district court or at such later time as the court may for good cause permit, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within his possession or control:
> (a) a list of the names and addresses of all persons whom the prosecutor intends to call as witnesses in the case-in-chief, <u>together with their relevant written or recorded statements</u>; (Emphasis supplied.)

The court further referred to the protective order provisions of § 46-15-328, MCA, as adopted in 1985, which provide:

> **Excision and protective orders.** (1) Upon a motion of any party showing good cause, the court may at any time order that disclosure of the identity of any witness be deferred for any reasonable period of time, not to

6

extend beyond 5 days prior to the date set for trial, or that any other disclosures required by 46-15-321 through 46-15-329 be denied, deferred, or regulated when it finds:

(a) that the disclosure would result in a risk or harm outweighing any usefulness of the disclosure to any party; and

(b) that the risk cannot be eliminated by a less substantial restriction of discovery rights.

(2) Whenever the court finds, on motion of any party, that only a portion of a document or other material is discoverable under 46-15-321 through 46-15-329, it may authorize the party disclosing it to excise that portion of the material which is nondiscoverable and disclose the remainder.

(3) On motion of the party seeking a protective or excision order or in submitting for the court's determination the discoverability of any material or information, the court may permit him to present the material or information for the inspection of the judge alone. Counsel for all other parties are entitled to be present when such presentation is made.

(4) If the court enters an order that any material or any portion thereof is not discoverable under 46-15-321 through 46-15-329, the entire text of the material must be sealed and preserved in the record in the event of an appeal.

The District Court pointed out that the test established by the Legislature is a finding by the Court that the disclosure would result in a risk or harm outweighing any usefulness of the disclosure to any party.

With regard to the sanction of contempt, the District Court discussed the matter of sanctions at some length in its memorandum. A key paragraph setting forth the reasons for the conclusion that there was intentional and purposeful conduct on the part of Ms. O'Connor is the following:

Notwithstanding the provisions of section 46-15-328, MCA, which establishes a procedure whereby the prosecution or the defense may apply to the Court for a Protective Order prohibiting the disclosure of the contents of a document or other material, Deputy County

Attorney O'Connor testified that it was her function to decide whether or not the statement should be released to defense counsel. (Transcript p. 107, 11. 1-10). The testimony of Deputy County Attorney O'Connor, and the lack of any evidence that she failed to disclose the existence of the statement through inadvertence or oversight, led the Court to the conclusion that she purposely and intentionally disobeyed a direct Order of the Court to provide defense counsel with a copy of all statements of the witness Turner.

The District Court then referred to § 46-15-329, MCA, adopted in 1985, which states:

> **Sanctions.** If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with any of the provisions of 46-15-321 through 46-15-329 or any order issued pursuant to 46-15-321 through 46-15-329, the court may impose any sanction that it finds just under the circumstances, including but not limited to:
> (1) ordering disclosure of the information not previously disclosed;
> (2) granting a continuance;
> (3) <u>holding</u> a witness, party, or <u>counsel in contempt;</u>
> (4) precluding a party from calling a witness, offering evidence, or raising a defense not disclosed; or
> (5) declaring a mistrial when necessary to prevent a miscarriage of justice. (Emphasis supplied.)

The court next referred to § 3-1-501, MCA, which in relevant part provides:

> **What acts or omissions are contempts.** (1) the following acts or omissions in respect to a court of justice or proceedings therein are contempts of the authority of the court:
> . . .
> (e) <u>disobedience of any lawful</u> judgment, <u>order</u>, or process of the court;
> . . .

Pertinent to the foregoing is the penalty provision set forth in § 3-1-519, MCA, which states:

> **Penalty.** Upon the answer and evidence taken, the

8

court or judge must determine whether the person proceeded against is guilty of the contempt charged. If it be adjudged that he is guilty of the contempt, a fine may be imposed on him not exceeding $500 or he may be imprisoned not exceeding 5 days, or both.

Also pertinent is § 3-1-523, MCA, which states in pertinent part:

**Judgment and orders in contempt cases final.** The judgment and orders of the court or judge made in cases of contempt are final and conclusive. There is no appeal, but the action of a district court or judge can be reviewed on a writ of certiorari by the supreme court . . .

The District Court concluded that the facts in the present case are similar to those in Matter of Graveley (1980), 188 Mont. 546, 614 P.2d 1033. The District Court pointed out that not only did Deputy County Attorney O'Connor directly violate an order of the court, but her failure to disclose the existence of the statement deprived the defendants of the opportunity to exercise their statutory right to obtain all witness statements unless the State could make a showing that "disclosure would result in a risk of harm outweighing any usefulness of the disclosure to any party."

This Court has been furnished with transcripts of the hearings on the motions before the District Court and has received the benefit of extensive briefs on the part of Ms. O'Connor, the District Court, and the Attorney General's Office. The Court has concluded there is no necessity for the issuance of a writ of certiorari, which is described in our statutes as a writ of review (§ 27-25-101, MCA.) The Court has concluded no hearing is required.

I

The Attorney General contends this is a constructive criminal contempt proceeding, that due process standards were not followed because Ms. O'Connor was not advised that she was charged with contempt, and that there was a failure to prove the appropriate mental state required for a criminal contempt. Ms. O'Connor makes a similar argument.

The District Court held that a contempt had been committed under the provisions of § 3-1-501(e), MCA. That is not by definition a criminal contempt proceeding. It is true that under § 3-1-519, MCA, the court has the power upon a judgment of contempt to impose a fine not exceeding $500 or to imprison a person not exceeding 5 days, or both. We point out that § 45-7-309, MCA, provides that a person commits the offense of criminal contempt when he knowingly engages in various defined conduct. The District Court did not proceed under § 45-7-309, MCA.

We do not find it necessary to determine whether or not the present order of contempt could be classified under any theory as a criminal contempt. We conclude that regardless of the classification of the contempt, due process standards were met in the present case. As previously quoted, the order of February 28, 1990, advised Ms. O'Connor that she was to appear to show cause, if any she may have, why sanctions pursuant to § 46-15-329, MCA, should not be imposed. As quoted, § 46-15-329, MCA, provides for the sanction of contempt where there has been a failure to comply with disclosure required by the preceding statutes. That notice is adequate for due process purposes to advise Ms. O'Connor of the

10

charges against her and to give her a reasonable opportunity to meet the charges by way of defense or explanation. In addition, the transcript demonstrates that County Attorney Hanser and Deputy County Attorney Hoefer, testified at length and explained their thinking with regard to full disclosure. Ms. O'Connor also testified at length and explained her thinking in some detail. Her explanation contradicted the testimony on the part of both Mr. Hanser and Mr. Bradley. They concluded that the Turner statement should be furnished. Ms. O'Connor disagreed with that conclusion.

With regard to a proof of mental state, while the statute in question here does not require an action which may be classed as a "knowing" act, again it is clear from the transcripts and the arguments that Ms. O'Connor ably and consistently and at length presented her views on the subject of disclosure of the statements. She clearly understood her obligations to disclose witness identity and statements, and reached her conclusions not to disclose, which she still holds. We conclude there is substantial evidence which demonstrates knowing conduct on the part of Ms. O'Connor. We further conclude there is substantial evidence in the record to support the conclusions reached by the District Court regardless of whether the burden was upon the State or upon Ms. O'Connor.

We therefore conclude that Ms. O'Connor received due process.

II

Ms. O'Connor contends that the District Judge has stated the issue as whether a deputy county attorney who violates a direct court order and the Montana Criminal Discovery statutes is guilty

11

of contempt. She points out the answer may be yes if the violation was wilful, and then argues that there was nothing which can be classed as wilful violation on her part. She argues that because the 70 page statement did not even contain the name or any discussion of the defendant Evenson, with whom we are concerned in the present case, it cannot be classed as a relevant written statement. In addition she argues that if there was a violation of the omnibus order, there was not substantial evidence to demonstrate it was wilful. She last argues on due process standards which have previously been considered.

In Marks v. First Judicial District Court (1989), 781 P.2d 249, 251, 46 St.Rep. 1804, 1805, this Court stated that in reviewing a contempt appeal, this Court's standard of review is whether substantial evidence supports the judgment of contempt. In Matter of Graveley, where a $200 contempt was levied against the County Attorney and Sheriff, this Court stated that in civil contempt proceedings, the type, character and extent of punishment rests in the court's discretion as measured by the showing made and that in light of the findings made and the evidence supporting the findings, the district court was justified in assessing a sum of $200 against each of the petitioners.

In a directly comparable manner, we conclude that in the present case, the findings made by the District Court were supported in all instances by substantial evidence, and that the District Court was justified in assessing $200 as the fine under § 3-1-519, MCA and § 3-1-501, MCA.

12

In view of the extended argument on the part of Ms. O'Connor that she cannot be held responsible for her conduct because she did not wilfully violate the statute requiring disclosure by her of the statements to defense counsel and consideration by the District Court, we refer to a portion of the transcript of her own testimony. In response to cross-examination by counsel, Ms. O'Connor, when asked if the 70 page document was a witness statement, answered by stating that her position was that the 70 page document was not an investigative statement. In response to questioning from the judge Ms. O'Connor pointed out that she would not concede that the 70 page statement was a witness statement within the meaning of the discoverable witness statutes. Upon further extended examination by the judge, she stated that under § 46-15-322, MCA, which requires a prosecutor to make available to the defendant all persons to be called as witnesses with their relevant written statements, her position was that it is up to the prosecutor to make the determination as to which statements are relevant and which are not. The court then attempted to have Ms. O'Connor indicate whether or not she thought the court had the power to make the ultimate determination on this issue, and Ms. O'Connor chose not to take that position. She also pointed out that her view was that it depended on whether the witness statement was "investigative or intelligence in nature." She also pointed out that it was the State (the prosecution and sheriff's office) which had the obligation to determine whether the statement met that standard.

13

As previously mentioned, in their testimony, both County Attorney Hanser and Chief Deputy County Attorney Bradley concluded that under the statute and also under the open file policy of the County Attorney's office, the statement in question should be disclosed to defense counsel and to the court with a request that the court determine whether or not some portions of the statement should not be disclosed under the provisions of § 46-15-328, MCA. Ms. O'Connor's position is set forth clearly in the following quotation from the transcript of her testimony:

> Q    If I remember Mr. Bradley's testimony correctly, it was his opinion that at the time those persons were charged, whatever interview given by Hal Turner which may have been part of an intelligence file at that time became part of the investigative file. Do you disagree with that?
>
> A    Yes, I disagree with that.
>
> Q    On what bases?
>
> A    I don't think that a statement which--that a document which belongs to an intelligence file somehow magically becomes part of an investigative file, unless its substance so dictates.
>
> Q    Then we get to the question of who decides what the substance is.
>
> A    In this particular instance with regard to the Standley case, sir, I did.
>
> Q    Do you believe that is properly within your purview to make that decision?
>
> A    Yes.
>
> Q    As to whether information contained in an interview is inculpatory or exculpatory or grounds for impeachment?
>
> A    I think that I am responsible to make such decisions with an understanding that if I make them

14

> incorrectly sanctions will be made against the government. (Emphasis supplied.)

As best this Court can determine, this appears to be the key point of Ms. O'Connor's argument. She contends she cannot be held in contempt because she had a good faith belief there was no reason to disclose the Turner statement. As mentioned, both the County Attorney and Chief Deputy County Attorney disagreed with her. It is clear that she still disagrees with both of them. It is also clear from her testimony and her arguments that she does not concede that the District Judge was correct when he concluded that the statute required of the prosecution that the information be furnished to defense counsel and submitted to the court for determination as to whether disclosure was required. We have reviewed the 70 page Turner statement and agree with the conclusions of the District Court and the County Attorney and Chief Deputy County Attorney that disclosure was necessary.

The District Court expressed its concern as to the procedure in 12 to 14 other criminal cases where intake interviews of confidential informants were not disclosed to the county attorney, to the defense counsel or to the court. In a similar manner, the court expressed its concern that even though the omnibus order required disclosure of the confidential informant and the witness statement, even though the open file policy of the Yellowstone County Attorney's office required such disclosure, and even though the statutes required disclosure, Ms. O'Connor still contended that she was not required to disclose the existence of the Turner statement to defense counsel or to the court.

15

The ultimate responsibility for the determination of nondisclosure to the defendant rested in the District Court and not in Ms. O'Connor. The District Court concluded that Ms. O'Connor's failure to make the Turner statement available constituted contempt of court and assessed the $200 fine. We affirm that conclusion and the action of the District Court.

We conclude there is no necessity for the issuance of a writ of certiorari or writ of review. This matter is remanded to the District Court for such further proceedings as it may require.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice John C. Sheehy did not participate.

16