No. 96-219

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

KIM MICHAEL SOL,

Defendant and Appellant.



APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge Presiding.



COUNSEL OF RECORD:

For Appellant:

Gary W. Wolfe, Sol & Wolfe, Missoula, Montana


For Respondent:

Honorable Joseph P. Mazurek, Attorney General;
Michael L. Fanning, Assistant Attorney General,
Helena, Montana

Robert L. Deschamps III, County Attorney, Missoula
Montana

Submitted on Briefs: February 20, 1997

Decided: March 20, 1997
Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Kim Michael Sol appeals from two orders of the Fourth Judicial District Court, Missoula County, denying his motions to dismiss a charge of driving under the influence of alcohol and/or drugs. We affirm.

The issues are:

1. Did the District Court err when it refused to grant Solþs motion to dismiss because the Justice Court clerk transmitted the record of the case to the District Court thirty-one days after Sol filed his notice of appeal, instead of within thirty days as required by  46-17-311(3), MCA?

2. Did the District Court err when it refused to grant Solþs motion to dismiss based on the Stateþs failure to supply a witness and exhibit list?

BACKGROUND

Sol was arrested on June 5, 1994, by Missoula County Deputy Sheriff Phil Tillman and was charged with driving under the influence of alcohol in violation of  61-8-401, MCA. At booking, he submitted to a breath test. The Intoxilyzer 5000 indicated that Sol's breath alcohol concentration was .184.

Sol pleaded not guilty to an amended complaint charging him with driving under the influence of alcohol and/or drugs. The complaint was amended because there was evidence that Sol had inhaled Primatene Mist, in addition to having consumed alcohol, on the evening of his arrest.

Sol initiated discovery regarding the testimony of the Stateþs proposed expert witness, Phil Lively, of the State Crime Lab. In response to Solþs discovery motions, the Justice Court ordered the State to make Lively available regarding his knowledge of cases in which the Intoxilyzer 5000 had been shown to be unreliable.

On April 25, 1995, in response to an April 24 letter from Solþs attorney, Gary Wolfe, asking the State if it maintained that Primatene Mist had no effect on the intoxilyzer, the Stateþs intern prosecutor, Kirsten LaCroix, informed Wolfe that Sol should obtain his discovery from Lively. The letter stated:

Last fall . . . Mr. Sol requested that the State provide him with all tests done on the Intoxilyzer 5000 since its

purchase. The Court directed Mr. Sol to contact Phil Lively to inquire about relevant testing done. To my knowledge, Mr. Sol has declined to do this. Regardless, Phil will be available after May 8, 1995, to answer the questions that you pose.

Please call Mr. Lively after May 8, to discuss the experiments, as well as the citation to the journal you are interested in. His telephone number is . . . .

Sol was convicted in Justice Court of driving under the influence of alcohol and/or drugs. On June 22, 1995, he appealed to the District Court for a trial de novo. The Justice Court clerk transmitted the record on July 25, 1995, one day after the thirty-day deadline required by 46-17-311(3), MCA. After receiving the record, the District Court ordered both parties to submit discovery in compliance with 46-15-322, MCA.

On August 15, 1995, Sol moved to dismiss the DUI charge, based on the Justice Court clerkþs one-day delay in transmitting the record. He subsequently filed a second motion to dismiss and a motion in limine to prevent the State from calling witnesses or introducing evidence. Sol based this motion on the Stateþs failure to file notice of witnesses and exhibits, and to disclose witness statements and exculpatory evidence, as directed by the court's discovery order. The State did not file a witness and exhibit list in District Court because it planned to use the same evidence as in Justice Court.

The court denied Sol's first motion to dismiss and resolved his second motion at two hearings and during trial. At the first hearing, the State confirmed that all of the evidence it was going to present was the same evidence used in Justice Court. The District Court denied Sol's second motion to dismiss, but limited the State's case to the evidence presented in Justice Court or disclosed in preparation for the Justice Court trial.

At a hearing held on October 10, 1995, Sol attempted to bar evidence concerning tests that Lively performed regarding bronchial dilators on the Intoxilyzer 5000. Sol claimed that the Justice Court had barred similar evidence because the State failed to disclose an expert witness statement and to supply a summary of the tests. The court questioned intern prosecutor Dylan Jackson to determine whether Sol knew about the Primatene Mist tests. The intern explained that the tests had been disclosed, and that LaCroix's notes indicated that she had written Sol's attorney on April 25, 1995, explaining how he could obtain information about them. The court granted Sol's motion to exclude the tests because they were not properly disclosed.

Sol's case proceeded to trial on October 10, 1995. During the Stateþs direct examination of Lively, Sol objected, arguing that the State's questions were barred by the courtþs earlier ruling.

The court ruled that the State could offer evidence which had been disclosed to Sol through direct discovery or during the course of the Justice Court trial.

The court then asked Sol if he was aware of tests Lively had conducted involving Primatene Mist. Sol responded that he was unaware of the tests, their results, or how they were conducted. The court then directed the intern to summarize Lively's proposed testimony and ordered Sol to raise his hand if he heard something new. Sol did not raise his hand. He eventually admitted that the State had supplied him with the publication about which Lively would testify. He also admitted knowledge of the tests:

I heard--Well, the part about a bunch of tests way in the past that he doesn't have any results on, I don't recall that at all. I recall him specifically saying, I did a test with four people a couple of months ago, that was in the May trial.

Sol then argued that the State was required to supply him with its exculpatory evidence in writing. The court concluded that the State had made the reports available for examination and reproduction. It determined that Sol knew there was a test, and that if he went to the Crime Lab and saw there was a written report, he could have obtained a copy. Based on this discussion, the court ruled that the State could question Lively about the Primatene Mist tests because Sol had adequate notice. The court received as exhibits a letter from Sol's attorney to the State, dated April 24, 1995, and LaCroix's reply letter of April 25, 1995.

On October 12, 1995, a jury convicted Sol of driving under the influence of alcohol. Sol appeals from the District Court's denial of his motions to dismiss.

1. Did the District Court err when it refused to grant Sol's motion to dismiss because the Justice Court clerk transmitted the record of the case to the District Court thirty-one days after Sol filed his notice of appeal, instead of within thirty days as required by  46-17-311(3), MCA?

Sol argues that the District Court erred when it denied his motion to dismiss based on the Justice Court clerkþs one-day delay in transmitting the record. The District Court ruled that the transmittal of the record is a statutory obligation imposed on the Justice Court, and that the one-day delay did not prejudice Sol's speedy trial rights.

The grant or denial of a motion to dismiss in a criminal case is a question of law. City of Helena v. Danichek (Mont. 1996), 922 P.2d 1170, 1172, 53 St.Rep. 767, 768. The standard of review of a district courtþs conclusion of law is plenary, and we review it to determine whether the conclusion of law is correct. Danichek, 922

P.2d at 1172.

Section 46-17-311(3), MCA, provides:

Within 30 days of filing the notice of appeal, the court shall transfer the entire record of the court of limited jurisdiction to the district court.

This Court has consistently held that strict compliance with 46-17-311, MCA, is necessary to perfect an appeal. State v. Speith (1990), 244 Mont. 392, 394, 797 P.2d 221, 222. Perfecting an appeal is the duty of the appellant, Speith, 797 P.2d at 222, while physically transmitting the record is the responsibility of the Justice Court. State v. Dubray (1982), 201 Mont. 327, 329-30, 654 P.2d 970, 971-72.

Under 46-17-311(3), MCA (1989), an appellant was charged with the duty of perfecting the appeal and the consequences for failing to do so. Unlike 46-17-311(3), MCA (1989), the justice court, not the appellant, now transfers the record to the district court. See 46-17-311(3), MCA; Cf. 46-17-311(3), MCA (1989). Under 46-17-311(3), MCA, an appellant perfects an appeal by filing written notice of appeal within ten days of judgment.

Sol cites cases involving appeals initiated by defendants, such as Speith, 797 P.2d at 221; State v. Hartford (1987), 228 Mont. 254, 741 P.2d 1337; and State v. Main (1981), 191 Mont. 304, 623 P.2d 1382, which lead him to assume that 46-17-311, MCA (1989), has only been strictly construed against defendants. This is incorrect. Based on this assumption, Sol argues that the Justice Court clerk's failure to comply with 46-17-311, MCA, should be strictly construed against the State. We disagree.

We have strictly construed 46-17-311, MCA, against the State when it failed to perfect an appeal. See State v. Province (1987), 226 Mont. 425, 426, 735 P.2d 1128, 1129. The plain language of 46-17-311, MCA, requires the justice court to transfer the entire record of the court of limited jurisdiction to the district court. The statute does not impose a duty on the prosecution to transmit the record nor does it penalize the prosecution for failing to do so.

Dubray, 654 P.2d at 970, addressed the remedy under 46-17-311, MCA, for a defendant who filed a timely notice of appeal from justice court and instructed the clerk to transmit the record to district court, but the clerk failed to do so. The district court dismissed the defendantþs appeal as untimely. This Court reinstated the appeal, reasoning that the "justice court has complete control over the record of a proceeding in its court and should be responsible for any physical transmittal of the record." Dubray, 654 P.2d at 971. Appeal statutes should not be a trap for the unwary but should be a device to assure timely review of a lower court judgment. Dubray, 654 P.2d at 972.

The same reasoning applies here. The Justice Court clerk had complete control over the record in this case, and neither the

prosecution nor Sol was responsible for its transmittal. We decline to attribute the Justice Court clerk's failure to strictly comply with 46-17-311, MCA, to the prosecution.

Sol claims that the District Court lacked jurisdiction to hear his trial de novo because the record was transmitted one day late. Sol provides no legal authority for his jurisdictional argument. An appellant carries the burden of establishing error by the trial court. Moreover, Rule 23, M.R.App.P., requires the appellant to cite to authority which supports the position being advanced on appeal. Because Sol has failed to do so, we decline to address his jurisdictional argument.

Sol also asserts that under the Fourteenth Amendment and Article II, Section 24, of the Montana Constitution, he has a right to a speedy trial. In his arguments, Sol entwines speedy trial and due process rights. Because he appears to be arguing that the one-day transmittal delay violated both his right to a speedy trial and to due process, we address both issues.

A.    Speedy trial.

A criminal defendantþs right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution. State v. Matthews (1995), 271 Mont. 24, 27, 894 P.2d 285, 287. Once either party appeals a criminal action from a justice court to a district court, speedy trial issues are analyzed under the four-part test established in Barker v. Wingo (1972), 407 U.S. 514, 523, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101, 112-13. State v. Bullock (1995), 272 Mont. 361, 368-69, 901 P.2d 61, 66-67.

Whether a defendantþs right to a speedy trial has been violated requires a balancing of four factors:  1) length of the delay; 2) reason for the delay; 3) assertion of the right by the defendant; and 4) prejudice to the defendant. Matthews, 894 P.2d at 287. When considering the first factor, the time for calculating the length of delay commences on the date that the defendant files his notice of appeal to district court. See State v. Nelson (1991), 251 Mont. 139, 142, 822 P.2d 1086, 1088. Sol filed his notice of appeal from Justice Court on June 22, 1995. The District Court scheduled the case for trial on October 10, 1995--110 days later.

The first factor, the length of the delay, must be presumptively prejudicial before the remaining three factors will be analyzed. Matthews, 894 P.2d at 287. A delay of less than six months is not presumptively prejudicial. Bullock, 901 P.2d at 67. We hold that the Justice Court clerkþs one-day delay, which most likely resulted in Sol's trial being scheduled 110 days later, rather than 109, is not presumptively prejudicial. Therefore, we do not address the other Barker criteria.

Sol's constitutional right to a speedy trial was not violated when the Justice Court clerk transmitted the record of the case in

thirty-one, rather than thirty days. The District Court properly concluded that Solþs speedy trial rights were not prejudiced.

B.    Due process.

Sol cites Province, 735 P.2d at 1128, for his proposition that 46-17-311, MCA, is a procedural due process statute. In Province, the State failed to provide the defendant with its notice of appeal from justice court. The State argued that 46-17-311, MCA, meant no more than giving the justice court written notice. We disagreed and held "giving written notice of an intention to appeal" under 46-17-311, MCA, requires that the defendant receive notice. Province, 735 P.2d at 1129.

That is not the situation here. Procedural due process requires notice and the opportunity to be heard. See State v. Kingery (1989), 239 Mont. 160, 166, 779 P.2d 495, 499. Sol, as appellant, had adequate notice of his own appeal and received numerous opportunities to be heard--at two trials and several evidentiary hearings. Again, we note that Sol suffered no prejudice as a result of the one-day delay in the transmittal of his record. Sol's procedural due process rights were not violated when the Justice Court clerk transmitted the record of his case to the District Court in thirty-one, rather than thirty days.

We conclude that the District Court did not err when it refused to grant Sol's motion to dismiss based on the Justice Court clerk's one-day delay in transmitting the record of the case. We affirm the District Court's denial of Sol's first motion to dismiss.

2.    Did the District Court err when it refused to grant Sol's motion to dismiss based on the State's failure to supply a witness and exhibit list?

Sol argues that the State violated Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and 46-15-322(1)(e), MCA, when it failed to disclose exculpatory evidence about Lively's Primatene Mist tests. He cites State v. Dist. Court, Thirteenth Dist. (1990), 245 Mont. 88, 799 P.2d 1056, where we upheld contempt proceedings against an attorney who refused to disclose discovery. He also cites State v. Licht (1994), 266 Mont. 123, 879 P.2d 670, where this Court explained the mandatory duty imposed by 46-15-322(1)(e), MCA, on the prosecution to disclose exculpatory information. Sol argues that these cases require the State to disclose information about the Primatene Mist tests.

Sol's argument fails because the State disclosed to Sol that he could discuss the test results with Lively at the Crime Lab. A letter from intern prosecutor LaCroix to Sol's attorney demonstrates that on April 24 and 25, 1995, Sol had actual notice that the State's expert witness had conducted tests concerning the effect of Primatene Mist on the Intoxilyzer 5000. Sol knew whom to talk to, where to find him, his phone number, and when he could be

contacted.  Sol had only to go to the Crime Lab and request copies of the tests that Lively had conducted.

Based on the April 1995 letters, the District Court determined that Sol was on notice of the existence of the challenged evidence.  At trial, Sol admitted that the State had supplied him with a publication about which Lively would testify and agreed that Lively could testify about it.  He also admitted that he knew about the tests.

Sol had actual notice, as early as April 25, 1995, of the evidence that the State planned to use against him.  He cannot claim that on October 10, 1995, six months later, he was surprised by the evidence or that it was wrongfully withheld.  We conclude that the State did not withhold exculpatory evidence against Sol.

Sol next argues that the State violated  46-15-322(5), MCA, and the District Court's omnibus order, by failing to disclose witnesses, identify experts, and provide summaries of their testimony.  He cites the court's omnibus order, claiming that it states:

I.  The State shall immediately, and on a continuing basis:  (a)    Disclose the names of the State's witnesses (including experts), their statements, or a short summary of their anticipated testimony if no statement exists. [Emphasis added].

Sol misquotes the order.  It states:

1.    In compliance with MCA 46-15-322, the State shall immediately and on a continuing basis:

(a)  Disclose the names, addresses and statements of the State's witnesses (including experts) that the State may call as witnesses in their case-in-chief.

When the language of a statute is clear and unambiguous, we look no further than to the plain meaning of the statute for its interpretation.  State v. Long (1995), 274 Mont. 228, 237, 907 P.2d 945, 950.  We conclude that the language of  46-15-322(5), MCA, is clear and unambiguous.

Section 46-15-322(5), MCA, does not require a prosecutor to prepare or disclose summaries of witness testimony.  On the day of trial, the District Court read Sol a portion of  46-15-322(5), MCA, and explained to him that the State was not obligated to disclose summaries of witness testimony.  We hold that based on the plain meaning of  46-15-322(5), MCA, that the State was not obligated to provide Sol with summaries of witness testimony.

Sol has been unable to demonstrate that he suffered prejudice or surprise as a result of the State's alleged discovery violations.  The District Court received testimony at two hearings to determine whether Sol knew about Lively's testimony concerning

the effect of Primatene Mist on the Intoxilyzer 5000. It concluded that Sol was aware of the tests and that the State had made the results of the tests "available for examination and reproduction."

After Sol admitted that he knew of the tests, he claimed that the State was obligated to deliver the results to him. The court offered a reasonable solution by telling Sol that all he had to do was go over and get the reports. We agree.

We find equally unconvincing Solþs argument that the State's expert testimony and reports resulted in surprise or prejudice. An appellant is required to order those portions of the transcript that he "deems necessary" for his appeal. Rule 9(b), M.R.App.P. Because Sol did not order a transcript of the District Court trial, we do not have a record of whether the disputed evidence was offered at trial, and if it was, whether it resulted in surprise or prejudice.

We hold that the District Court did not err when it refused to grant Sol's second motion to dismiss based on the State's failure to supply a witness and exhibit list.

Affirmed.

/S/  J. A.  TURNAGE

We concur:
/S/  KARLA M. GRAY
/S/  W. WILLIAM LEAPHART
/S/  JIM REGNIER
/S/  TERRY N. TRIEWEILER