FILED

10/25/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0226

DA 16-0226

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 269

FLATHEAD BANK OF BIGFORK, MONTANA,
a Montana Corporation,

        Plaintiff and Appellee,

  v.

MASONRY BY MULLER, INC., a Montana
Corporation, and WILLIAM MULLER,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                     In and For the County of Flathead, Cause No. DV-13-1153C
                     Honorable Heidi Ulbricht, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

             William Muller (Self-Represented), Kalispell, Montana

        For Appellee:

             Randall S. Ogle, Ogle & Worm, PLLP, Kalispell, Montana

Submitted on Briefs:  September 21, 2016

Decided:  October 25, 2016

Filed:

_____
                           Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 William Muller (Muller) appeals from the order of the Eleventh Judicial District Court, Flathead County, granting Flathead Bank of Bigfork's (Flathead Bank) motion for summary judgement. We affirm.

¶2 We restate the issues on appeal as follows:

*Issue one: Did the District Court err in finding that the issuance of an IRS Form 1099-C does not constitute a discharge of debt?*

*Issue two: Did the District Court err in finding that Muller could not personally appear on behalf of Masonry?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Between March 2010 and May 2013, Masonry by Muller, Inc. (Masonry) and Flathead Bank entered into four promissory notes totaling $170,622.88. Muller signed the promissory notes, individually and as president of Masonry, and he personally guaranteed three of the loans through separate commercial guaranties. Masonry and Muller failed to pay the installments due on the promissory notes and Flathead Bank subsequently issued an IRS Form 1099-C to Muller, naming September 18, 2013, as the date of the identifiable event.[1] In November 2013, Flathead Bank filed a complaint

---

[1] Under federal regulations implementing the IRS reporting requirements of 26 U.S.C. § 6050P (2012), certain entities that discharge an indebtedness "must file an information return on Form 1099-C with the Internal Revenue Service. Solely for purposes of the reporting requirements of section 6050P and this section, a discharge of indebtedness is deemed to have occurred . . . if and only if there has occurred an identifiable event described in paragraph (b)(2) of this section, whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred." 26 C.F.R. § 1.6050P-1(a) (2013). The "identifiable events" that trigger the IRS reporting requirement "include discharge through the debtor's filing for bankruptcy, the expiration of the statute of limitations for collection, discharge by agreement of the parties, a creditor's decision 'to discontinue collection activity and discharge

alleging that Muller and Masonry had defaulted on all four loans and that it was entitled to the outstanding balance of the loans. Muller answered the complaint personally, but did not file an answer on behalf of Masonry.

¶4 On October 28, 2015, Flathead Bank filed a motion for summary judgment, arguing it had shown that Muller and Masonry owed a valued and existing debt, nonpayment of the debt, and present ownership of the debt. Muller denied owing the amount requested by Flathead Bank and stated that Masonry was insolvent and non-existent. He also argued that Flathead Bank's filing of the IRS Form 1099-C cancelled his debt to the Bank. Flathead Bank contended that the filing of the Form 1099-C is an IRS requirement, even where a debt has not been discharged, and that the form alone did not cancel the debt. The District Court granted Flathead Bank's motion for summary judgement and Muller filed a timely notice of appeal with this Court.

**STANDARD OF REVIEW**

¶5 We review a district court's grant of summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as the district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. We review a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous. *Pilgeram*, ¶ 9. Under Rule 56(c), summary judgment will be granted if the moving party can show there is no genuine

---

debt,' and 'expiration of the non-payment testing period.'" *FDIC v. Cashion*, 720 F.3d 169, 178 (4th Cir. 2013); *See* 26 C.F.R. § 1.6050P-1(b)(2)(i).

issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Roe v. City of Missoula*, 2009 MT 417, ¶ 14, 354 Mont. 1, 221 P.3d 1200.

**DISCUSSION**

¶6     *Issue one:  Did the District Court err in finding that the issuance of an IRS Form 1099-C does not constitute a discharge of debt?*

¶7     Muller first appeals from the District Court's finding that Flathead Bank's filing of the IRS Form 1099-C did not extinguish his debt.  The court determined that the filing of the form did not constitute the release of Muller's debt; rather, the court found that it was an informational return Flathead Bank was required by law to file in this circumstance and, on its own, did not affect the legal obligations of the parties.  On appeal, Muller urges this court to hold that filing an IRS Form 1099-C constitutes prima facie evidence of an intent to discharge a loan.  We decline to do so.

¶8     A small minority of courts in other jurisdictions have held that the filing of an IRS Form 1099-C alone is prima facie evidence of a discharge, which then requires the creditor to prove that the form was filed by mistake or pursuant to other IRS requirements.  *See, e.g.*, *Amtrust Bank v. Fossett*, 224 P.3d 935 (Ariz. Ct. App. 2009); *Franklin Credit Mgmt. Corp. v. Nicholas*, 812 A.2d 51 (Conn. App. Ct. 2002).  In *FDIC v. Cashion*, 720 F.3d 169 (4th Cir. 2013), the Fourth Circuit Court of Appeals explained the minority approach:

> These courts have generally noted that because filing a Form 1099-C has legal significance to the debtor's income tax liability, and because the debtor faces penalties or fines for failing to comply with the obligations imposed, it would be inequitable to permit a creditor to collect the debt after having received the benefit of the "charge-off" of the debt from filing the Form 1099-C.  Lastly, some–but not all–of the courts holding that a

4

filed Form 1099-C alone is prima facie evidence of discharge have also recognized that the form can satisfy the applicable UCC provisions for when a writing constitutes an "intentional voluntary act" of discharge, and thus itself effectuates the discharge of the relevant debt.

*Cashion*, 720 F.3d at 178 (citing *Franklin Credit Mgmt.*, 812 A.2d at 60-61)).

¶9     On the other hand, the majority view reflects the position of recent IRS Information Letters, which treats the form as a means of satisfying the agency's reporting requirements and does not prohibit a creditor from collecting payment on a debt. *Cashion*, 720 F.3d at 178 (citing *Capital One, N.A. v. Massey*, No. 4:10-CV-01707, 2011 U.S. Dist. LEXIS 83817, at *10 (S.D. Tex. Aug. 1, 2011); *In re Zilka*, 407 B.R. 684, 689 (Bankr. W.D. Pa. 2009); *Lifestyles of Jasper, Inc. v. Gremore*, 299 S.W.3d 275, 277 (Ky. Ct. App. 2009)).

¶10    Federal regulations interpreting the IRC set forth a creditor's reporting requirements to the agency:

> any applicable entity . . . that discharges an indebtedness of any person . . . must file an information return on Form 1099-C with the Internal Revenue Service. Solely for purposes of the reporting requirements of [the applicable statute] and this section, a discharge of indebtedness is deemed to have occurred . . . if and only if there has occurred an identifiable event described in paragraph (b)(2) of this section, *whether or not an actual discharge of indebtedness has occurred* on or before the date on which the identifiable event has occurred.

26 C.F.R. § 1.6050P-1(a) (2013) (emphasis added) (interpreting 25 U.S.C. § 6050P (2012)).  There are eight identifiable events in the regulations that trigger the reporting obligation via a Form 1099-C; however, such an event may or may not involve an actual or intended discharge of indebtedness by a creditor.  *Cashion*, 720 F.3d at 178-79 (citing 26 C.F.R. § 1.6050P-1(b)(2)).  In other words, under the plain language of the regulation,

5

the IRS Form 1099-C reporting obligation can be triggered even where "an actual discharge of indebtedness had not yet occurred or is not contemplated." *Cashion*, 720 F.3d at 178.

¶11     This interpretation of the IRC and its corresponding regulations is also reflected in the conclusions of two 2005 IRS Information Letters, aptly described in the *Cashion* Opinion:

> In the first, the IRS addressed a creditor's concern that filing the Form 1099-C would constitute a written admission that it had discharged the debt and would therefore make debtors unwilling to pay on their obligations. Citing subsection (a) of [26 C.F.R. § 1.650P-1 (2013)], the IRS responded that it "does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection." In the second letter, the IRS assured a concerned creditor that filing a Form 1099-C satisfies the reporting requirements of statute and implementing, neither of which "prohibit collection activity after a creditor reports by filing a Form 1099-C."

720 F.3d at 179 (citations omitted) (citing I.R.S. Info. Ltr. 2005-0207 (Dec. 30, 2005); I.R.S. Info. Ltr. 2005-0208 (Dec. 30, 2005)). While not entitled to *Chevron*[2] deference, the *Cashion* court found these letters nonetheless persuasive and entitled to respect "because it fully encompasses the purpose of a Form 1099-C as an IRS reporting document and follows the plain language of the relevant regulation." *Cashion*, 720 F.3d at 179.

---

[2] The deference given to agency regulations and rulings under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984), does not extend to information letters interpreting the IRC and its regulations. *Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S. Ct. 1655, 1662 (2000) (explaining that "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference.").

¶12 Based on the foregoing, we adopt the majority position regarding the purpose of the Form 1099-C and hold that the issuance of an IRS Form 1099-C is not prima facie evidence of a creditor's intent to discharge a debt; rather, it is a means of satisfying the agency's reporting requirements and does not, in and of itself, prevent a creditor from seeking collection of a debt.

¶13 In this case, Muller claims that Flathead Bank cancelled his debt, basing his argument solely on the fact that the bank sent him an IRS Form 1099-C. He did not offer any additional evidence supporting his claim and did not deny that he failed to pay the installments due on the promissory notes. Thus, we cannot find that the District Court erred in granting summary judgment to Flathead Bank.

¶14 *Issue two: Did the District Court err in finding that Muller could not personally appear on behalf of Masonry?*

¶15 Muller also appeals the District Court's finding that Masonry failed to appear in this action. We have previously held that "[a] corporation 'cannot appear on its own behalf through an agent other than an attorney.'" *H&H Dev., LLC v. Ramlow*, 2012 MT 51, ¶ 18, 364 Mont. 283, 272 P.3d 657 (quoting *Cont'l Realty, Inc. v. Gerry*, 251 Mont. 150, 152, 822 P.2d 1083, 1084 (1991)). We have also held that a non-lawyer who attempts to represent a corporation in court is guilty of a contempt of court. *H&H Dev.*, ¶ 18 (citing *Zempel v. Liberty*, 2006 MT 220, ¶ 18, 333 Mont. 417, 143 P.3d 123); *See* § 37-61-210, MCA.

¶16 Here, Muller purported to act on behalf of Masonry, a Montana Corporation, in the District Court proceedings. However, he does not have a license to practice law in

7

Montana, nor was Masonry separately represented by an attorney licensed to practice law in Montana. Accordingly, the District Court correctly found that Muller could only represent himself personally and could not appear on behalf of Masonry. Given that the decision to hold a person in contempt rests in the court's discretion, we also cannot say that the District Court erred in failing to hold Muller in contempt of court for attempting to represent Masonry. *See State ex rel. O'Connor v. Dist. Court*, 245 Mont. 88, 97, 799 P.2d 1056, 1062 (1990).

## CONCLUSION

¶17 For the foregoing reasons, we affirm.


/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE